IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| INFOGROUP INC., Delaware corporation; | |
| Plaintiff, | **8:20CV109** |
| vs. | |
| OFFICE DEPOT, INC., a Delaware corporation; | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on defendant Office Depot, Inc.'s ("Office Depot") motion to dismiss and to compel arbitration/mediation, Filing No. 14.[1]  This is an action for copyright infringement under the Federal Copyright Act, 17 U.S.C. § 501.  Office Depot moves to dismiss Infogroup's complaint for lack of subject matter jurisdiction, under Federal Rules of Civil Procedure 12(b)(1), for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), for improper venue under Federal Rule of Civil Procedure 12(b)(3), and for failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), or, alternatively, to compel mediation pursuant to a contract between the parties.

I.      BACKGROUND

In its complaint, Infogroup, a business intelligence company, alleges that Office Depot misappropriated its copyrighted information database.  Infogroup first describes its copyright ownership interest in the "Infogroup U.S. Business Database" and attaches three copyright registrations.  Filing No. 1, Complaint at 2, Ex. A, 2017 Copyright

---

[1] Also pending is a motion for a hearing, Filing No. 37.  The Court finds the matter can be resolved without a hearing and the motion will be denied.

Registration, Ex. B, 2018 Copyright Registration, and Ex. C, 2019 Copyright Registration.  Infogroup alleges it sold the copyrighted database—containing addresses, email addresses, other contact information collected from publicly available sources over the years, and some of the data that was not obtained from outside sources, including predicted market preferences, resolution of conflicting data, and proprietary modelling of unavailable business information—data to Office Depot.  *Id.* at 3.  It alleges Office Depot obtained full electronic copies of Infogroup's Business Database between February 22, 2018 and April 3, 2019 via transfers from Infogroup to Office Depot.  *Id.*  It contends Office Depot infringed its copyrights by using the U.S. Business Database "to supply business data for use in Office Depot's mapping program, which is designed with multiple functions, including functions that allow Office Depot to understand small and medium business opportunities near its current business locations and identify new potential business locations."  *Id.*  It alleges that "Office Depot used Infogroup's Business Database in its Mapping Program without Infogroup's knowledge, consent, or authorization."  *Id.*  Infogroup seeks monetary damages under 17 U.S.C. § 504, an accounting of Office Depot's use of Infogroup's Business Database, and of  the benefits (financial and otherwise) that accrued to Office Depot from such use; and injunctive relief under 17 U.S.C. § 503 (including impounding and destruction of all portions of the Infogroup's Business Database incorporated into Office Depot's mapping program); costs and attorney fees; as well as such other relief as the Court deems proper.  *Id.* at 6-7.

Office Depot contends that Infogroup granted it an express license to use the database.  In support of its motion, Office Depot submits the declarations of Makund

Padmanabhan, Office Depot's Senior Director of Market Research, and Damon Lewis, Counsel for Office Depot, and attached exhibits, including series of written contracts known collectively as the Master Client Services Agreement ("MCSA") together with amendments known as "Statements of Services" ("SOS")(collectively, "the Agreement") that Office Depot and Infogroup executed over the span of a decade for use of a copy of components of Infogroup's database.    Filing No. 25, Declaration of Makund Padmanabhan ("Padmanabhan Decl."); Filing No. 26, Declaration of Damon Lewis, ("Lewis Decl."), Filing No. 16, Index of Evid., Filing Nos. 18-24, Exhibits.   Evidence submitted by Office Depot shows that the parties entered into the Agreement in 2009, it lapsed in 2016, but was renegotiated in 2017 to provide for location information including longitude and latitude for a term of three years.    Filing No. 25, Padmanabhan Decl. at 1-3.

The original MCSA provided the "[t]his Agreement shall be construed and governed in accordance with the laws of the State of Florida," and also waived rights to a jury trial.   The Agreement also included a dispute resolution clause providing that

> in the event a dispute should arise under this Agreement or relating in any manner hereto, the parties agree to attempt to mediate their dispute prior to the commencement of formal litigation (i.e., the filing of a lawsuit or other legal proceeding), using a third party mediator.   Any mediation shall take place in Palm Beach County, Florida, unless otherwise agreed to by the parties . . . .

Filing No. 26, Lewis Decl. at 1, Filing No. 19, Ex. 3, MCSA at 4.  That provision is limited by the following language: "In the event a party seeks equitable relief (such as injunctive relief or specific performance) . . . then there shall be no requirement that such party utilize the mediation process referred to herein."   *Id.* at 4-5.   In his declaration, Padmanabhan states that the parties understood that the data Infogroup would provide

would be used for internal research and analytics.  Filing No. 25, Padmanabhan Decl. at 2-3.  He also states that Office Depot informed Infogroup that it would not renew its contracts in or around March 2019 and the data Office Depot received from Infogroup was destroyed shortly thereafter, before the overall contract expired on May 8, 2020. *Id.* at 3.

Office Depot's motions to dismiss for lack of subject matter and personal jurisdiction, improper venue and failure to state a claim are inter-related.[2]  Office Depot's motion to dismiss for lack of subject matter jurisdiction is based on the arguments that 1) the matter is not ripe for adjudication because mediation is a condition precedent to suit, and 2) that there is no federal question jurisdiction because the complaint refers on its face to a license agreement, meaning the action is based on contract.  Office Depot essentially argues that Infogroup carefully crafted its complaint to avoid what is essentially a breach of contract action in order to manufacture jurisdiction where there is none.  It next contends that this court lacks personal jurisdiction over Office Depot because there are insufficient minimum contacts with Nebraska.  Then, it contends venue is improper because: first, the Court lacks jurisdiction; and second, because Office Depot does not reside in Nebraska, Office Depot cannot be found in Nebraska, and none of Office Depot's purported actions giving rise to Plaintiff's claims actually occurred in Nebraska.  It further argues that Infogroup has not alleged a

---

[2] In its reply brief, Office Depot states:

> Office Depot seeks dismissal and an order compelling Infogroup to mediate this matter. (Brief at 1.) If the Court finds no subject matter jurisdiction and no personal jurisdiction, it must dismiss. (*Id.* at 12). If the Court finds there is federal subject matter jurisdiction but no personal jurisdiction, the Court should transfer the case to the Southern District of Florida. (*Id.* at 28).

Filing No. 38, Reply Brief at 6 n.3.

potential violation of at least one exclusive right under the Copyright Act because it alleges only that it gave Office Depot the copyrighted material (arguably under an express or implied license) and Office Depot used it, which does not state a claim for relief under the Copyright Act.

In response, Infogroup argues the Court has subject matter jurisdiction because its complaint plainly details a copyright claim, which creates federal question jurisdiction. Infogroup argues that its copyright claim arises out of Office Depot's unauthorized, infringing use of Infogroup's U.S. Business Database and is not based on any contract with Infogroup. It argues it is entitled to choose its remedy, contending the dispute resolution clause of the Agreement is not applicable to its copyright cause of action. Also, it contends Office Depot's use of Infogroup's U.S. Business Database to create the store locator mapping program is not a permitted use under the license. Infogroup also contends that this Court has personal jurisdiction over Office Depot because Office Depot has consented to general personal jurisdiction in Nebraska, and the Court has specific jurisdiction because Office Depot aimed its tortious conduct at Nebraska and the effects of the tortious conduct were felt in Nebraska. It states it adequately alleges a claim for relief under the Copyright Act and argues that the licensing issue is an affirmative defense. Further, it argues that venue is proper because the Court has personal jurisdiction over the defendant. Infogroup submits the declaration of Terri Gibbons and attached documents showing that Office Depot does business in Nebraska and has a resident agent in Nebraska. Filing No. 32, Index of Evid.

II.    LAW

    A.    Fed. R. Civ. P. 12(b)(1)

Jurisdiction is a threshold issue for this Court.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-96 (1998); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.").  The party seeking to invoke federal jurisdiction carries the burden of proof on that issue.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

A complaint can be challenged under Fed. R. Civ. P. 12(b)(1) either "on its face or on the factual truthfulness of its averments."  *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction."  *Id.*  In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute.  *Id.*

Under 28 U.S.C. § 1331, this Court has jurisdiction over "all civil actions arising under the Constitution, laws, and treaties of the United States."  Under 28 U.S.C. § 1338(a), the district courts have "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks" and "no state court shall have jurisdiction over any claim of relief arising under such

Acts of Congress."  An action "arises under" the Copyright Act if the complaint seeks a remedy expressly granted by the Act, asserts a claim requiring construction of the Act, or presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.  *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 & n.3. (2d Cir. 1964) (Friendly, J.).

"The test outlined in *T.B. Harms* is essentially a reiteration of the 'well-pleaded complaint' rule that federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint." *Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 986 (9th Cir. 2003).  The analysis under *T.B. Harms* turns on what is alleged on the face of the complaint, rather than the "essence-of-the-dispute or merely-incidental test [which] looks rather at what defense will be proffered." *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349 (2d Cir. 2000) (rejecting the complex test set out in *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 931-32 (2d Cir. 1992)*,* for evaluating infringement /contract claims as unworkable, vague, and because it would "require the court to make complex factual determinations relating to the merits at the outset of the litigation—before the court has any familiarity with the case").[3]  "The *T.B. Harms* test has been adopted by all the circuits that have considered the question whether a suit arises under the Copyright Act for purposes of Section 1338, if the disputed issues include non-copyright matters." *Bassett,*  204 F.3d at 350; *see also*

---

[3] Office Depot relies on a line of cases from the Second Circuit, including *Lukasewych v. Wells, Rich, Greene, Inc., 747 F. Supp. 1089, 1093 (S.D.N.Y. 1990)*, that adopted the approach later described in *Schoenberg, 971 F.2d at 931-32* (finding a facial allegation of infringement was insufficient to confer federal jurisdiction, instead, district courts were required to must go behind the face of the complaint and use a three-part test to determine the true "essence" of the complaint).  The *Schoenberg* approach was abrogated in *Bassett, 204 F.3d at 351-52.  See LC Franchisor, LLC v. Valley Beef, LLC,* No. 4:15-CV-00383 JCH, 2015 WL 4067054, at *4 (E.D. Mo. July 2, 2015) (noting pre-*Bassett* split of authority within the Second Circuit over application of the *T.B. Harms* standard—with courts on one side looking at the face of the complaint to determine whether one of the *T.B. Harms* elements applied, and courts on the other looking beyond the face of the complaint to determine the "essence" of the dispute).

*1mage Software, Inc., v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1048–51 (10th Cir. 2006) (adopting and applying *T.B. Harms* approach); *Scholastic Entm't,* 336 F.3d at 986 (identifying *T.B. Harms* as majority rule); *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844–45 (D.C. Cir. 2002) (also adopting Second Circuit's analytical approach); *MCA Television Ltd. v. Pub. Interest Corp.*, 171 F.3d 1265, 1269 (11th Cir. 1999) (acknowledging approval of *T.B. Harms* test and rejecting argument that that the district court lacked subject matter jurisdiction because the case did not "arise under" the Copyright Act, but  was merely a breach of contract claim); *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969–70 (4th Cir. 1990) ("Judge Friendly, in *T.B. Harms Co. v. Eliscu*, set out what has remained the definitive jurisdictional test for copyright cases[.]") (citation omitted)); *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1, 2 (1st Cir. 1987) (applying *T.B. Harms* as "[t]he most frequently cited test"); *Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987) (adopting the *T.B. Harms* test); *Vestron, Inc. v. Home Box Office Inc.*, 839 F.2d 1380, 1381 (9th Cir. 1988) ("We have settled on Judge Friendly's formulation of copyright jurisdiction law as our test[.]").  Among the problems noted in connection with the "essence" approach was that it "left a class of plaintiffs who suffered copyright infringement bereft of copyright remedies" because state courts have no jurisdiction to grant remedies under the Copyright Act.  *Bassett*, 204 F.3d at 348, 352.

B.    Fed. R. Civ. P. 12(b)(2)

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be

subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (original brackets and internal quotation marks omitted)). The "'evidentiary showing required at the prima facie stage is minimal[.]'" *Id.* at 592 (quoting *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (internal quotation marks omitted)).   However, once personal jurisdiction has been controverted, the plaintiff's prima facie showing "'must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions or in opposition thereto.'" *Dever*, 380 F.3d at 1072 (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)). Although the plaintiff bears the ultimate burden of proof on the issue, if the district court does not hold a hearing and instead relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that part. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

There are two steps in the personal jurisdiction inquiry: (1) the exercise of jurisdiction must satisfy the forum state's long-arm statute, and (2) the nonresident must have sufficient 'minimum contacts' with the forum state to comport with requirements of due process.  *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir. 2003). Since the Nebraska long-arm statute extends jurisdiction to the outer boundaries of due process, the personal jurisdiction analysis merges into a single due process inquiry.  *Id.* The minimum contacts necessary for due process may be the basis for either "general" or "specific" jurisdiction.  *Johnson,* 614 F.3d at 794; *see Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)  (noting that courts recognize "two

types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

General jurisdiction allows a court to hear "any and all claims" against a defendant. *Goodyear,* 564 U.S. at 919. "[G]eneral jurisdiction requires affiliations "so 'continuous and systematic' as to render [the foreign corporation] essentially at home in the forum State[,] i.e., comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (quoting *Goodyear*, 564 U.S. at 919); *accord Viasystems*, 646 F.3d at 595. The general jurisdiction inquiry addresses the scope of a court's adjudicatory authority when an entity "'has not consented to suit in the forum.'" *Daimler AG,* 571 U.S. at 129 (quoting *Goodyear,* 564 U.S. at 928).

"Specific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson,* 614 F.3d at 795 (quoting *Steinbuch v. Cutler,* 518 F.3d 580, 586 (8th Cir. 2008)); *see Daimler AG,* 571 U.S. at 127); *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.")

Courts evaluating personal jurisdiction consider: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the defendant's contacts; (3) the relationship of the cause of action to the defendant's contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020). A

plaintiff can also obtain specific personal jurisdiction over a nonresident defendant by employing the "effects test" set out in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *Johnson*, 614 F.3d at 796. "*Calder* requires the consideration of additional factors when an intentional tort is alleged." *Id.* at 797. The "effects" test provides that a defendant's tortious acts can serve as a source of personal jurisdiction only "'where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered-and which the defendant knew was likely to be suffered-[in the forum state].'" *Id.* at 796 (quoting *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004) (internal quotations and citation omitted)). "This test 'allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state.'" *Id.* (quoting *Dakota Indus., Inc.*, 946 F.2d at 1390–91).

There is "a sharp distinction between 'mere untargeted negligence' and 'intentional, and allegedly tortious, actions' aimed expressly at the forum state." *Dakota Indus.*, 946 F.2d at 1390 (quoting *Calder*, 465 U.S. at 789). "Although the defendant's lack of control over the injurious result may weigh against jurisdiction in a negligence action, that lack of control will not bar jurisdiction when an injured party has alleged an intentional tort." *Id.* Copyright infringement is an intentional tort. *See id.* at 1391. "'Damage to intellectual property rights (infringement of a patent, trademark or copyright) by definition takes place where the owner suffers the damage.'" *Id.* at 1388 (quoting *Acrison, Inc. v. Control & Metering, Ltd.*, 730 F. Supp. 1445, 1448 (N.D. Ill.

11

1990)).   A corporation suffers economic injury at its principal place of business.  *Id.* at 1388-89.

Consent is another traditional basis of jurisdiction, existing independently of long-arm statutes.  *Knowlton v. Allied Van Lines*, 900 F.2d 1196, 1199 (8th Cir. 1990).  A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it.  *Id.*  "One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State."  *Id.*  "Such consent is a valid basis of personal jurisdiction, and resort to minimum-contacts or due-process analysis to justify the jurisdiction is unnecessary."  *Id.* at 1200; *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982); *Ytuarte v. Gruner + Jahr Printing & Pub. Co.*, 935 F.2d 971, 973 (8th Cir. 1991) (noting that appointment of an agent for service of process in Minnesota gives consent to jurisdiction without regard to whether the activities giving rise to the suit occurred within the state); *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1396 (8th Cir. 1993) (stating a defendant that registers an agent is subject to general jurisdiction in South Dakota, even if registered after a cause of action accrues).

C.    Fed. R. Civ. P. 12(b)(3)

"Copyright infringement claims are governed by a special venue statute, 28 U.S.C. § 1400(a), which provides that actions "arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a).[4]  In construing that section, courts have generally held that a defendant may

---

[4] The U.S. Supreme Court recently construed a clause in the related patent venue provision in the same section, § 1400(b), which provides that a patent infringement suit may be filed "in the judicial district

be 'found' in any district in which personal jurisdiction may be obtained over the defendant. *Dakota Indus., Inc.,* 946 F.2d at 1392 (stating that if personal jurisdiction exists at the commencement of the action, then venue is proper); *see also Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010) (in copyright infringement actions, venue is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1069 n.2 (10th Cir. 2008) (because only basis for challenging venue under copyright provisions is that the absence of personal jurisdiction in a forum renders venue improper, the question of venue is essentially swallowed by the jurisdictional analysis).

A district court is authorized, under 28 U.S.C. § 1404(a), to transfer any civil action for convenience of parties and witnesses in the interest of justice to any other district where it might have been brought. A district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,* 571 U.S. 49, 62 (2013).[5] Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing,

where the defendant resides." *TC Heartland, LLC v. Kraft Foods Grp. Brands, LLC,* 137 S. Ct. 1514, 1517 (2017). The Supreme Court unanimously held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *Id.* Given the similarity of language and the common statutory section, this holding may apply to the "resides" copyright venue provision as well, but the case has no application here, because the alternative "may be found" language applies.

[5] A different standard applies to cases involving a contractually valid forum-selection clause. *Atl. Marine,* 571 U.S. at 63. First, the plaintiff's choice of forum merits no weight; second, the court must deem the private-interest factors to weigh entirely in favor of the preselected forum and may consider arguments about public interest factors only; and third, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations. *Id.* at 64-65.

witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6, (1981) (internal quotation marks omitted)). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (quoting *Piper Aircraft*, 454 U.S. at 241 n.6 (internal quotation marks omitted)). The Court must also give some weight to the plaintiffs' choice of forum. *Id.* In general, the party seeking a transfer of venue bears the burden of establishing that the transfer should be granted.[6] *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).

### D.     Fed. R. Civ. P. 12(b)(6)

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss under Rule 12(b)(6), a court must accept the allegations contained in the complaint as true and draw reasonable inferences in favor of the nonmoving party. *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010).

---

[6] However, in the case of a valid forum-selection clause, the plaintiff, the party defying the forum-selection clause, "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Atl. Marine*, 571 U.S. at 63.

The Copyright Act "seeks to protect 'original works of authorship fixed in any tangible medium of expression,' by granting to the author certain exclusive rights," including "the right to reproduce the copyrighted work, and the right to create derivative works from the copyrighted work." *United Tel. Co. v. Johnson Publ'g Co.*, 855 F.2d 604, 607 (8th Cir. 1988) (*quoting* 17 U.S.C. § 102). A copyright also grants to the owner the exclusive rights to reproduce the copyrighted work and to distribute copies to the public. *Olan Mills v. Linn Photo,* 23 F.3d 1345, 1347 (8th Cir. 1994). "The statutory rights of a copyright owner include the exclusive right 'to prepare derivative works based upon the copyrighted work.'" *Mulcahy v. Cheetah Learning, LLC,* 386 F.3d 849, 852 (8th Cir. 2004) (quoting 17 U.S.C. § 106(2)). The Copyright Act broadly defines a derivative work as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted."[7] 17 U.S.C. § 101. Copyright infringement is the violation of one of these exclusive rights of the copyright owner. *United Tel. Co.,* 855 F.2d at 607; *see also Mulcahy,* 386 F.3d at 852 ("One who violates the copyright owner's right to create derivative works is an infringer."). There is a presumption of copyright validity attendant to a certificate of copyright registration. *United Tel. Co.,* 855 F.2d at 607.

"A claim for copyright infringement involves two elements: (1) ownership and

---

[7] "A derivative work may itself be copyrighted if it has the requisite originality[,] [but] 'the copyright is limited to the features that the derivative work adds to the original.'" *Mulcahy,* 386 F.3d at 852 (quoting *Pickett v. Prince,* 207 F.3d 402, 405 (7th Cir. 2000)). Because the owner of the original copyright has the exclusive right to prepare derivative works, the creator of an original derivative work is only entitled to a copyright if she had permission to use the underlying copyrighted work. *Id.*; *see* 17 U.S.C. § 103(a).

validity of the copyright, and (2) potential violation of the copyright owner's exclusive rights by, for example, unauthorized reproduction and distribution of the copyrighted work." *Pinkham v. Sara Lee Corp.*, 983 F.2d 842, 830 (8th Cir. 1992); *see, e.g.*, *Mulcahy,* 386 F.3d at 852 (stating the elements are first, "ownership of a valid copyright," and second, "copying of original elements of the work."); *see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (stating that to establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright and (2) that the defendant copied some protectible expression or violated another right granted by the copyright); *United Tel. Co.*, 855 F.2d at 607 ("[T]he plaintiff must prove: (1) ownership of the copyright; and (2) 'copying' of protectible expression by the defendant.")

The existence of a license will not necessarily preclude a claim for copyright infringement. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999), *overruled on other grounds as recognized by Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011). Generally, a copyright licensor waives his right to sue his licensee for copyright infringement, and may sue only for breach of contract, but if the license is limited in scope, and the licensee acts outside the scope of the license, the licensor may sue for copyright infringement. *Id.*; *see also Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) ("If . . . a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement."); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 940 (9th Cir. 2010) (noting the potential for copyright infringement exists where the licensee's action exceeds the

license's scope or in a manner that implicates one of the licensor's exclusive statutory rights)."

"The existence of a license authorizing use of copyrighted material is an affirmative defense." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018)); *see also Photographic Illustrators Corp. v. Orgill, Inc.*, 370 F. Supp. 3d 232, 243 (D. Mass. 2019), *aff'd*, 953 F.3d 56 (1st Cir. 2020).   For an affirmative defense to provide a basis for dismissal under Rule 12(b)(6), "the affirmative defense must be 'apparent on the face of the complaint,' which  'include[s] public records and materials embraced by the complaint' and 'material[s] attached to the complaint.'"  *A.H. ex rel. Hubbard v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 453 (8th Cir. 2016) (quoting *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012)).

On a showing of infringement, a copyright owner is entitled to recover either the copyright owner's actual damages and any additional profits of the infringer under 17 U.S.C. § 504(b), or statutory damages under 17 U.S.C. § 504(c).  If the copyright owner proves that an infringement was committed willfully, the court in its discretion may increase the award of statutory damages.   17 U.S.C. § 504(c)(2); *see Cass County Music Co. v. C.H.L.R.*, 88 F.3d 635, 637 (8th Cir. 1996).

III.   DISCUSSION

The Court first finds it has subject matter jurisdiction over this action.  The plaintiff asserts a claim that falls within the federal question jurisdiction of the court as well as its exclusive jurisdiction under 28 U.S.C. § 1338(a).  As discussed below in connection with Rule 12(b)(6), the complaint makes out an infringement claim and seeks remedies expressly created by federal copyright law.   It seeks statutory relief provided by 17

U.S.C. § 502 (injunction), § 504 (damages and profits), and § 505 (costs and attorneys' fees).  Infogroup seeks statutory relief under federal copyright law, which, by virtue of the federal district courts' exclusive jurisdiction, only a federal court can administer.  Under the well-pleaded complaint rule, these allegations are sufficient to establish federal jurisdiction.

The Court rejects Office Depot's argument that the dispute resolution clause mediation clause in its licensing agreement requires mediation as a condition precedent to suit and means Infogroup's action is not ripe for adjudication.  To the extent that Office Depot's contention raises a factual challenge to subject matter jurisdiction, the Court has considered the materials submitted by Office Depot in support of its motion and finds Office Depot has not established that mediation is required in the circumstances of this case.  First, the mediation clause applies to disputes about the contract, and at this stage of the litigation, this is not a contract dispute, but a copyright infringement action.  Also, the Court tends to agree with Infogroup that the dispute resolution clause, by its terms, does not require mediation of a suit for injunctive relief and Infogroup clearly seeks injunctive relief.  At any rate, there are factual disputes over the scope of the license.  Office Depot's argument that an injunction is an impossibility because it has already returned the offending materials fails to consider Infogroup's prayer for an accounting and for impounding and destruction of whatever portions of Infogroup's U.S. Business Database are allegedly incorporated into Office Depot's mapping program, and/or of the means of reproduction of that material.  These matters cannot be resolved in the case's present posture.

Office Depot's purported license does not affect the Court's subject matter jurisdiction.  Going behind the pleadings is not consistent with the majority rule that that requires that subject matter jurisdiction under the Copyright Act is determined on the face of the complaint, without considering any answer or any issue raised as an anticipatory defense.  In any event, the record shows there are factual issues with respect to the scope of the license and whether Office Depot's use of Infogroup's U.S. Business Database exceeded the scope of that license.  The Court cannot address the issue at the pleading stage, nor can the Court resolve the issue as a matter of law based on the record before the Court.

The Court next finds it can assert personal jurisdiction over defendant Office Depot.  The record shows that has consented to suit in this jurisdiction by virtue of conducting business in the state and maintaining a registered agent for service of process in Nebraska.  Accordingly, the Court need not conduct a due process inquiry. Nevertheless, the Court finds Office Depot's contacts with the State of Nebraska are extensive enough that exercise of this Court's jurisdiction does not offend notions of fair play and substantial justice. Infogroup has shown that Office Depot has numerous retail stores in Nebraska and negotiated the contract at issue with executives located in the state.  Also, The *Calder* "effects" test is satisfied because the claim involves an intentional tort whose effects will be felt in Nebraska, Infogroup's principal place of business.  Moreover, Nebraska has a strong interest in providing a forum for claims alleging infringement of its citizens' copyright rights.  Based on the foregoing, Office Depot could reasonably anticipate being hauled into court in Nebraska.

The determination that the Court has personal jurisdiction over the defendant is dispositive of the venue issue. Office Depot "may be found" in Nebraska by virtue of its numerous contacts with the state and because it consented to jurisdiction here. Further, Office Depot has not sustained its burden to show that a transfer is warranted. The Court affords some weight to the plaintiff's choice of forum, and finds the balance of public and private interests weigh in favor of maintaining the action in this forum.[8] Factors of convenience are equally balanced—Office Depot's witnesses are in Florida and Infogroup's are here. Travel in connection with business litigation is part of the cost of doing business as a large corporation.

The Court finds that Infogroup has stated a claim for relief for copyright infringement. It has alleged ownership of the copyright and has alleged that the defendant's use of its copyrighted materials infringed its rights under the Copyright Act. It alleges the use is unauthorized and therefore outside the scope of any licensing agreement. Office Depot's alleged license is a potential affirmative defense. If asserted, the burden will be on Office Depot to prove that its use of Infogroup's U.S. Business Database was within the permitted scope of use under the terms of the license. At this point the plaintiff's complaint is sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

IT IS ORDERED:

1.   Defendant's request for a hearing (Filing No. 37) is denied as moot.

---

[8] Whether the Agreement's forum selection clause is applicable or determinative is a matter that can be addressed if and when the defendant asserts the license as an affirmative defense.

2.      Defendant's motion to dismiss or to compel mediation (Filing No. 14) is

denied.

Dated this 13th day of November, 2020.

                                        BY THE COURT:

                                        s/ Joseph F. Bataillon
                                        Senior United States District Judge