IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| INFOGROUP INC., Delaware corporation;<br><br>Plaintiff,<br><br>vs.<br><br>OFFICE DEPOT, INC., a Delaware corporation;<br><br>Defendant. | **8:20CV109**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on Plaintiff Infogroup Inc.'s motion to compel certain specialized discovery, (Filing No. 79), and the motion to stay case deadlines during the pendency of the motion to compel, (Filing No. 75). For the reasons explained below, both the motion to compel and the motion to stay will be granted in part, and denied in part, as stated below.

BACKGROUND

Infogroup and Office Depot had a licensing agreement which required Office Depot to cease using any and all of Infogroup's licensed data and remove the data from its databases and files after the agreement was terminated. Infogroup's lawsuit alleges that Office Depot violated this agreement by retaining and using Infogroup's data after the licensing agreement expired.

The parties contacted the court in late June 2021 requesting a discovery dispute conference. That conference was held on July 14, 2021. (Filing No. 68, audio file). Among the topics which were discussed was Infogroup's request to

depose Mukund Padmanabhan, who was Office Depot's former Senior Director of Market Research. Padmanabhan's declaration had been previously filed in this case in support of Office Depot's motion to dismiss. It states, in part:

> Office Depot expressed a desire for information about where businesses were located based on latitude and longitude. Infogroup listened to Office Depot's needs, understood how Office Depot intended to use the data, and offered a manipulation of its database to provide the data in the format Office Depot would need for its mapping program, including the latitude and longitude data Office Depot required.

(Filing No. 25 at CM/ECF p. 2, ¶ 10). Based upon Padmanabhan's declaration, Infogroup believed the "mapping program" referred to in the declaration was a computer program or piece of software. Infogroup seeks discovery on whether its data remained integrated into Office Depot's "mapping program" after the Infogroup/Office Depot licensing agreement ended. (Filing No. 1 at CM/ECF p. 3).

Office Depot served discovery responses which Infogroup believed were inconsistent with its understanding of the mapping program. In its answer to Interrogatory No. 1, Office Depot described accessing "certain discrete subsets of data points from Infogroup's Business Database pursuant to the license agreement and then having Office Depot employees use "third-party GIS software to plot certain Business Facts[1] on maps." (Filing No. 77-1 at CM/ECF p. 5; Filing No. 85-17 at CM/ECF p. 5). The interrogatory answer further stated that the maps were produced as "static documents with no interactive functionality." (Id.)

During the conference call with the court. the parties had a lengthy discussion of what was meant by the term "mapping program." Counsel for Office

---

[1] "Business Facts" is a collective term used to describe business addresses, location by longitude and latitude, an industry classification code, and/or the number of employees a business had at a particular location. (Filing No. 77-1 at CM/ECF p. 5).

2

Depot equated the use of the term "mapping program" with the way a college education "program" describes a group of individuals studying a certain subject. Office Depot asserted that the term "mapping program" described a group of individuals tasked with plotting data, including latitude and longitude, to analyze the appropriate locations for the opening or closing of brick-and-mortar stores. As described by Counsel for Office Depot: "The mapping program is not a thing. It is not a tangible item or a file or anything like that. It's a group of people that were doing something together." (Filing No. 68, audio file at 16:00).

Infogroup requested a deposition to clarify the meaning of "mapping program," alleging that Office Depot's oral definition of the program was inconsistent with the use of that term in Padmanabhan's declaration. Infogroup also requested that any such deposition would not count against the maximum number of depositions the parties agreed upon, nor preclude an additional deposition of the deponent later in the case.

During the July 14 call, the undersigned considered the positions of the parties and determined that the deposition was necessary because the descriptions of the mapping program put forth by the parties were unclear and there was a fundamental disagreement regarding the definition or description of the term "mapping program." The undersigned found that the information Office Depot provided left room for Infogroup's inference of impropriety and a deposition at the outset of the action would assist the parties to be on the same page moving forward, specifically stating:

> So, let's get that 30(b)(6) (or however you want to do it) deposition done so that everybody is . . . on record from the clients [regarding] exactly what "mapping program" means, how it's implemented, the data that's within it, when that data stopped being used, if ever, those types of things. Focus on the mapping program. Let's get that done, and that deposition will not count against Infogroup. . . .

3

> [W]e've got to get some base nomenclature at the beginning of the lawsuit otherwise, . . . they're thinking it's one thing, you're thinking it's another thing and nobody really knows what's going on, least of all the finder of fact at the end of this.

(Filing No. 68, audio file at 30:20-31:40.) Office Depot then argued that Office Depot does not have mapping software, and to the extent that Infogroup thinks "mapping program" refers to Office Depot's real estate team using data to make maps pursuant to the license, there is nothing to produce. (Filing No. 68, audio file at 37:00).

The undersigned took Office Depot's argument in response to the oral ruling as a request for formal motion practice with a written opinion, stating:

> I'm still convinced that I'd like to head this off at the very beginning, any discrepancy in what is meant by "mapping program." I recognize that your argument is that [Padmanabhan's] a private citizen, at this point in time is no longer employed at Office Depot, but I think under these circumstances it would make sense to have him deposed twice. But these decisions that I make orally are intended to try to resolve things by compromise and it sounds as if that compromise solution that I came up with . . . is something Office Depot still objects to.

(Filing No. 68, audio file at 38:00)

Infogroup filed the pending motion to compel and a motion to stay progression deadlines while the motion is pending. The undersigned will take up both motions at this time.

## STANDARD

The Federal Rules of Civil Procedure allow for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The proportionality analysis then requires the court to weigh "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The broad scope of Fed. R. Civ. P. 26 generally allows discovery "unless it is clear the information sought can have no possible bearing on the case." Ingram v. Covenant Care Midwest, Inc., 2010 WL 1994866, at *3 (D. Neb. 2010).

## ANALYSIS

A. Motion to Compel

Infogroup's motion to compel has two parts, one regarding the deposition of Mukund Padmanabhan, and the other a request that the court impose a reciprocal ESI search term protocol.

1. Deposition

Infogroup's motion to compel requests: (1) The deposition of Mukund Padmanabhan using the proposed list of deposition topics attached to its motion. (Filing No. 77-1 at CM/ECF p. 23); (2) The deposition of Padmanabhan will not count against the number of depositions Infogroup is permitted to take under Fed.

R. Civ. P. 30(a)(2)(A); and, (3) The deposition of Padmanabhan regarding the mapping program not preclude Infogroup from deposing him again.

    i.      Whether Padmanabhan Should be Deposed

In response to the instant motion to compel, Office Depot states

> It is undisputed that Office Depot has offered to designate Mukund Padmanabhan as a Rule 30(b)(6) corporate deponent to substantiate this, consistent with the interrogatories he verified. Indeed, Office Depot offered Infogroup a preliminary deposition of Mr. Padmanabhan on the exact subjects identified by the Court at the July 14, 2021 teleconference.

(Filing No. 84 at CM/ECF p. 4).

Therefore, the question before the court is not whether to compel the deposition of Padmanabhan, but rather the scope of that deposition and whether an initial deposition will preclude a later deposition of this witness.

    ii.      Scope of the Deposition

Infogroup has submitted a proposed list of deposition topics to Office Depot. (Filing No. 81-1 at CM/ECF pp. 37-38). Counsel for Infogroup indicated that these proposed topics were in addition to "comprehensive questioning about the Mapping Program as referenced in various emails, correspondence, pleadings, briefs, and discovery responses." (Id.)

Office Depot opposes the breadth of the proposed topics and suggests that the deposition of Padmanabhan should be limited to: (1) what the "mapping program" is and whether it exists; (2) if it exists, how it works; (3) what Infogroup information is incorporated into the alleged "mapping program"; and (4) whether

6

the alleged "mapping program" is still being used by Office Depot. (Filing No. 81-1 at CM/ECF p. 39, Filing No. 84 at CM/ECF p. 11). It argues that this is "near verbatim with what the Court said." (Filing No. 84 at CM/ECF p. 11).

The purpose of a preliminary deposition of Padmanabhan is to provide a baseline understanding of Office Depot's mapping program so both parties are on the same page as they move through this lawsuit. The undersigned has reviewed the written arguments of the parties and maintains that it is appropriate to depose Padmanabhan on his knowledge and understanding of the mapping program. Infogroup is allowed to conduct a comprehensive inquiry on the limited subject of the mapping program. And having reviewed Infogroup's detailed listing of deposition topics, I find each of those topics is within that comprehensive inquiry regarding Office Depot's mapping program.

    iii.    Whether Padmanabhan Can be Deposed Twice

Office Depot asserts that it has been unable to find any case or rule which allows the court to authorize a second deposition of an individual before a first has been conducted.[2] (Filing No. 84 at CM/ECF pp. 18, 21-22). Citing case law where courts have allowed a second deposition of the same witness when new evidence arises after the first deposition, or where the examining party was unable to conduct a full examination of the deponent in the first deposition due to an opposing party's obstructive behavior, Office Depot implies that this court is without the authority to allow Infogroup to depose Padmanabhan twice where neither of these two circumstances has arisen.

---

[2] The court notes that two-part depositions are not uncommon in certain types of cases; e.g., where issues of qualified immunity or insurance bad faith are raised, and interim court decisions may resolve or limit the scope of the case. A similar goal may be reached if the term "mapping program" is clarified at the outset of this lawsuit.

Fed. R. Civ. P. 26(b)(2)(a) provides: "By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30." District courts have broad discretion to limit discovery and decide discovery motions. Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc., 237 F.R.D. 215, 218 (D. Neb. 2006). As the Supreme Court has stated, because discovery rules should " 'be construed to secure the just, speedy, and inexpensive determination of every action'... judges should not hesitate to exercise appropriate control over the discovery process." Id. (quoting Herbert v. Lando, 441 U.S. 153 (1979)). "[T]he district court possesses inherent power 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.' " Vallejo v. Amgen, Inc., 903 F.3d 733, 749 (8th Cir. 2018)

Padmanabhan's deposition on the subject of the "mapping program" is essential to define the term and ensure the parties are not litigating a definition as applied to discovery, rather than the merits of the case itself, as the case moves forward. As stated in the July 14 discovery conference, the undersigned maintains the position that "so long as [Infogroup] stay[s] within the parameters of the mapping program" the deposition will not count against Infogroup nor preclude Infogroup from deposing Padmanabhan again, later in this action. (Filing No. 68, audio file at 30:20-31:40.) However, if a second deposition of Padmanabhan is necessary, Infogroup will not be permitted to re-examine him on topics already covered, or which could have been covered, in the first deposition.

2. Search Term Protocol

Infogroup asserts that Office Depot's responses to discovery regarding the mapping program are "evasive and incomplete" and "Office Depot's document production, which is premised on similar 'vague and ambiguous' objections, is similarly evasive and incomplete." (Filing No. 81 at CM/ECF p. 20). In essence,

8

Infogroup asserts that because the document production to date has been "filtered" through the same counsel who interpreted the meaning of the mapping program to be something inconsistent with Padmanabhan's declaration, it does not trust that the document production to date has been unbiased. Infogroup submits that it is willing to submit to a "reciprocal ESI search term protocol" because: (1) the terms would be mutual; (2) the amount of disclosed damages exceeds $3.2 million; (3) the parties are both sophisticated and represented by counsel; (4) there have been alleged attempts to obfuscate; (5) the issues are important and central to this action; and (6) there is underlying mistrust between the parties, and objective productions are needed. ([Filing No. 81 at CM/ECF p. 21](#)).

Office Depot asserts that: (1) Infogroup's suggested protocol would require it to restart production and review of the documents; (2) Infogroup did not meet and confer appropriately to resolve this issue between the parties; and (3) Infogroup did not describe ways in which the information already provided by Office Depot was deficient. ([Filing No. 84 at CM/ECF p. 16](#)).

Under Rule 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rules if it determines that (i) the discovery sought is unreasonably cumulative or duplicative . . . ; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Here, Office Depot states that its productions to date have been exhaustive, including searches of 43 custodians and over 60 search terms which were determined using Infogroup's complaint and discovery requests as a guide. Office Depot further asserts that, using the ESI protocol stipulated in April 2021, Office Depot has produced 21,000 plus pages responsive to Infogroup's discovery requests and has spent more than $140,000 searching, compiling, reviewing, and producing documents in the course of this litigation. Office Depot states the ESI search term protocol Infogroup requests was not suggested until

9

June 28, 2021, after Office Depot represented to Infogroup that its production was substantially complete. Office Depot alleges that Infogroup has not identified any deficiency with respect to what was produced, and to implement a mutual ESI protocol now would require re-review or re-production of the documents already produced. (Filing No. 84 at CM/ECF p. 23).

Infogroup has not identified a specific deficiency in Office Depot's production. However, it has argued that the confusion over the description of the mapping program has justifiably prompted Infogroup to question Office Depot's effort and accuracy in reviewing and producing information responsive to Infogroup's discovery requests. Infogroup suggests that "Office Depot would simply run software-based searches and produce the documents" after the parties agreed to the custodians, search terms, relevant time frame and privilege terms. (Filing No. 88 at CM/ECF pp. 8-9). Infogroup asserts this is not unduly burdensome and the production would be free of the potential "taint" of allowing individual review of the documents to be produced.

The ESI dispute currently before me fully supports permitting a preliminary deposition of Padmanabhan. A disconnect or misunderstanding of the meaning of "mapping program" has caused mistrust between the parties and counsel. And that mistrust has, in turn, incited a significant discovery dispute on the appropriate parameters for reviewing ESI in response to discovery requests. Frankly, the court could not have invented a better example to prove its point on the Padmanabhan deposition issue.

As of now, Infogroup is surmising that the search Office Depot has already conducted was slanted toward a "mapping program" definition that will not be supported by Padmanabhan's sworn testimony. So, it would seem that once the Padmanabhan preliminary deposition is completed, Infogroup will know whether

Office Depot's search terms were sufficient for exploring its ESI to find documents responsive to Infogroup's discovery. Moreover, Office Depot claims the ESI discovery issue was not thoroughly discussed among the parties before the pending motion was filed.

For all of these reasons, the ESI discovery motion is premature. It will be denied, without prejudice to filing a new motion after Padmanabhan is deposed and the parties have engaged in frank discussions regarding the import of that testimony on selecting relevant ESI search terms, the proportionality of requiring additional ESI searches, the parties' respective positions on the merits of this case as a whole, and whether alternative dispute resolution could resolve this lawsuit before additional and costly discovery is performed.

### B. Case Progression

Office Depot asserts that Infogroup has unnecessarily delayed progression and the filing of the motion to compel discovery therefore there is not good cause to modify the progression schedule. Specifically, it asserts that Infogroup stated that it could file the motion by August 17, 2021, but it did not file the motion until September 3, 2021. Further, it argues that Infogroup could have taken Padmanabhan's complete deposition, as Padmanabhan's declaration was produced in June 2020, Office Depot's interrogatory responses were submitted in March 2021, and Office Depot's supporting documents were produced in June 2021.

Office Depot's argument that Infogroup was not diligent, and it should have taken the complete deposition by now, is somewhat misleading. While the declaration was available to both parties last year, it was not until Office Depot's responses to discovery were produced that Infogroup had reason to question the

inconsistent definition of "mapping program" as between Office Depot's senior management, employees, and counsel. Moreover, on August 3, 2021, the court received an email from Infogroup which requested until August 17 to file a motion to compel. Office Depot responded that it planned to further meet and confer with Infogroup regarding the issues. As such, the court did not set a formal motion to compel deadline for those specific disputes. But the motion to compel deadline in the court's progression order was September 3, 2021. Infogroup's motion was timely filed under the progression order.[3]

Having concluded that the parties need to establish the meaning of "mapping program" that will guide this case going forward, there is good cause to extend the progression schedule to allow for the deposition of Mukund Padmanabhan, including all deadlines that were unexpired at the time Infogroup filed its motion to stay progression deadlines. But rather than set an entirely new case progression schedule now, the court will set interim deadlines and a conference call. Infogroup will be given until December 3, 2021 to notice and complete the 30(b)(6) deposition of Padmanabhan regarding the mapping program. Thereafter, the court will convene a conference call to discuss how this case should proceed to resolution.

Accordingly,

IT IS ORDERED:

1) Plaintiff's motion to compel specialized discovery is granted in part, and denied in part, (Filing No. 79), as follows:
    a. the request to initially depose Mukund Padmanabhan regarding the meaning of Office Depot's "mapping program" is granted. This deposition will not count toward Infogroup's total limit on the

---

[3] Since Infogroup's motion to stay was filed on the written discovery deadline, August 20, 2021, the written discovery deadline was unexpired when the motion was filed. (see Filing No. 56).

   number of depositions, and it will not preclude Infogroup from re-deposing Padmanabhan later on topics <u>other than</u> the mapping program topics covered, or which could have been covered, during the first deposition.

   b. Plaintiff's motion to compel a reciprocal ESI protocol is denied without prejudice to re-filing, if appropriate, after the parties' January 6, 2022 conference call with the court.

2) Plaintiff's motion to stay or amend case progression, ([Filing No. 75](#)),

   is granted in part, and denied in part, as follows:

   a. The initial deposition of Mukund Padmanabhan described in paragraph 1(a) of this order must be taken on or before December 3, 2021.

   b. A new case progression schedule will not be set at this time. But all unexpired deadlines in the court's progression order are stayed pending a conference call with the undersigned magistrate judge to be held on January 6, 2022 at 11:00 a.m. Counsel shall use the conferencing instructions assigned to this case to participate.

   During this conference call, the parties must be prepared to discuss the need and proportionality of requiring additional ESI searches, and whether prompt alternative dispute resolution could resolve this lawsuit before additional and costly discovery is performed.

Dated this 29th day of October, 2021.

                                            BY THE COURT:

                                            *s/ Cheryl R. Zwart*
                                            United States Magistrate Judge