**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

INFOGROUP INC., a Delaware corporation,

        Plaintiff,

vs.

OFFICE DEPOT, INC., a Delaware
Corporation,

        Defendant.

Case No. 9:23-cv-80358-AMC

---

**INFOGROUP'S RESPONSE TO OFFICE DEPOT, INC.'S MOTION TO DISMISS
AMENDED COMPLAINT**

INFOGROUP INC., Plaintiff,

By: /s/ Anthony M. Lawhon, Esq.
    Anthony M. Lawhon, Esq.
    Anthony M. Lawhon, P.A.
    3003 Tamiami Trail N., Suite 200
    Naples, FL 34103
    (239) 325-8956
    (239) 236-3300 (fax)
    TonyLawhon@lawhon-law.com

And

    Gregory C. Scaglione (*pro hac vice*)
    KOLEY JESSEN P.C., L.L.O.
    One Pacific Place, Suite 800
    1125 South 103rd Street
    Omaha, NE 68124-1079
    (402) 390-9500;
    (402) 390-9005 (facsimile)
    greg.scaglione@koleyjessen.com

*Attorneys for Plaintiff Infogroup Inc.*

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................1

II.  LEGAL ARGUMENT ...........................................................................2

    A.  Infogroup's Burden under Fed. R. Civ. P. 12(b)(6) .....................2

    B.  Infogroup's Burden under Fed. R. Civ. P. 12(b)(1) .....................4

III.  ARGUMENT .......................................................................................6

    A.  The Court Should Deny Office Depot's Motion to Dismiss
        Infogroup's Claim for Breach of Contract.....................................6

        1.  Infogroup's Complaint States a Claim for Breach of Contract..........6

        2.  In the Event the Court Finds Infogroup's Allegations Insufficient,
            Infogroup Requests Leave to Amend Its Amended Complaint ........8

    B.  Office Depot's Attempts to Re-Litigate Previous Findings Regarding
        Infogroup's Copyright Claim Are Improper and Should Be Denied.............8

        1.  Office Depot's Motion to Dismiss Infogroup's Copyright
            Infringement Claim for Failure to State a Claim Should Be
            Denied .........................................................................9

            a.  Office Depot Is Barred from Raising New Argument That
                Infogroup's Copyright Claim Fails to State a Claim for
                Relief....................................................................9

            b.  Infogroup's Copyright Infringement Claim Is Adequately
                Pled......................................................................9

        2.  Infogroup Has Article III Standing to Pursue a Copyright Claim and
            This Issue Is Ripe for Adjudication................................................14

IV.  CONCLUSION ...................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...................................2, 3, 14

*Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.,*
    No. 8:03CV527, 2006 WL 994566 (D. Neb. Jan. 27, 2006)...............................12, 13

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ........................................................................3

*Cook v. George's, Inc.,*
    952 F.3d 935 (8th Cir. 2020) ........................................................................3

*Ferman v. Jenlis, Inc.,*
    224 F. Supp. 3d 791 (S.D. Iowa 2016) .........................................................13

Garrett v. Cassity,
    No. 4:09CV01252 ERW, 2011 WL 3235633, at *3 (E.D. Mo. July 28, 2011)..............9

*Gray v. Wiese,*
    8:16CV227, 2016 WL 4487735 (D. Neb. Aug. 25, 2016)............................................4

*Griner v. King,*
    568 F. Supp. 3d 978 (N.D. Iowa 2021) ................................................................3, 13

*Infogroup, Inc. v. DatabaseLLC,*
    956 F.3d 1063 (8th Cir. 2020) ......................................................................10

*Moore v. Columbia Pictures Indus., Inc.,*
    972 F.2d 939 (8th Cir. 1992) ......................................................................12

*Mulcahy v. Cheetah Learning, LLC,*
    386 F.3d 849 (8th Cir. 2004) ......................................................................10

*Nebraska Pub. Power Dist. v. MidAmerican Energy Co.,*
    234 F.3d 1032 (8th Cir. 2000) ......................................................................4

*Nelson v. PRN Prods., Inc.,*
    873 F.2d 1141 (8th Cir. 1989) ......................................................................13

*Parrish v. Dayton*,
761 F.3d 873 (8th Cir. 2014) ..................................................................5

*Reno v. Catholic Soc. Servs., Inc.*,
509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) ...........................4, 5

*Rottlund Co. v. Pinnacle Corp.*,
452 F.3d 726 (8th Cir. 2006) ................................................................11

*Taylor Corp. v. Four Seasons Greetings, LLC*,
403 F.3d 958 (8th Cir. 2005) ................................................................12

*Westcott v. City of Omaha*,
901 F.2d 1486 (8th Cir. 1990) .................................................................3

*Zola v. TD Ameritrade, Inc.*,
172 F. Supp. 3d 1055 (D. Neb. 2016), aff'd 889 F.3d 920 (8th Cir. 2018) .................8

**State Cases**

*Havens v. Coast Fla., P.A.*,
117 So. 3d 1179 (Fla. Dist. Ct. App. 2013)................................................6

**Federal Statutes**

17 U.S.C. § 101 .........................................................................................14

Federal Copyright Act, 17 U.S.C. § 501..........................................................11

**Rules**

Fed. R. Civ. P. 8(a)(2)...............................................................................2

Fed. R. Civ. P. 12(b)(1)..........................................................................4, 14

Fed. R. Civ. P. 12(b)(6)..........................................................................2, 8, 9

Fed. R. Civ. P. 12(g)(2)...........................................................................2, 9

Fed. R. Civ. P. 15(a) ...............................................................................8

**Constitutional Provisions**

U.S. Constitution Article III ..................................................................4, 14, 16

**Other Authorities**

*Infogroup, Inc. v. DatabaseUSA.com LLC*,
8:14-cv-49 ...........................................................................................10

Plaintiff Infogroup Inc. ("Infogroup") respectfully submits the following Brief in Opposition to Office Depot, Inc.'s ("Office Depot") Motion to Dismiss the First Amended Complaint (the "Motion") pursuant to the Court's Order dated March 13, 2023, ECF No. 208.[1]

## I.   INTRODUCTION

On March 24, 2020, Infogroup filed its Complaint against Office Depot with the United States District Court for the District of Nebraska alleging copyright infringement. Filing No. 1. Office Depot subsequently filed a Motion to Dismiss and Compel Arbitration, arguing, among other things, that Infogroup's allegations of copyright infringement failed to state a claim for which relief can be granted. Filing No. 14. The United States District Court for the District of Nebraska denied Office Depot's Motion to Dismiss and Compel Arbitration in its entirety, specifically finding that Infogroup's "complaint makes out an infringement claim[.]" Filing No. 39 at ECF pp. 17-19.

On August 16, 2022, with leave of the Court, Infogroup filed its Amended Complaint (the "Amended Complaint"), which revised Infogroup's copyright claim to conform with Infogroup's understanding of the evidence to date and added a breach of contract claim based on Office Depot's various breaches of Statement of Services #10 ("SOS 10"). Thereafter, Office Depot filed its Motion to Dismiss or in the Alternative to Transfer; and the case was transferred. Filing No. 196. On March 15, 2023, this Motion followed.

---

[1] This Response is being filed in compliance with this Court's recent Order authorizing Plaintiff to file its Response limited to the unresolved portions of Defendant's initial Motion to Dismiss (DE #180).  This Response is taken from Plaintiff's original Response (DE #182), and is limited to those unresolved portions of Defendant's Motion to Dismiss.

At times, Office Depot pretends that the Motion concerns Infogroup's newly-asserted breach of contract claim; but in reality, the Motion is instead Office Depot's illicit attempt to get a second bite at the proverbial apple and re-litigate specific, unmistakable findings of the United States District Court for the District of Nebraska regarding Infogroup's claim for copyright infringement. Office Depot's attempts to resuscitate its argument for dismissal of Infogroup's copyright infringement claim for failure to state a claim is also barred by Fed. R. Civ. P. 12(g)(2), which prohibits a defendant from raising a 12(b)(6) defense that was or could have been raised in an earlier motion.

Separate and apart from Office Depot's ostensible efforts to re-litigate issues that have already been briefed and ruled on, Office Depot's arguments that Infogroup's Amended Complaint fails to adequately plead breach of contract is unpersuasive. Infogroup's breach of contract claim is supported by the plain language of SOS 10 and is replete with factual allegations. Accordingly, Office Depot has no basis for seeking dismissal of the Amended Complaint and Office Depot's Motion should be denied in its entirety.

## II.   LEGAL STANDARD

### A.   Infogroup's Burden under Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief…" To survive a motion to dismiss under Rule 12(b)(6), a complaint must only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will only be dismissed if it does not plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

On a motion to dismiss, a court must "assume that well-pleaded factual allegations in the complaint are true and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the 'complaint is construed most favorably to the nonmoving party,'… and would impose the sort of 'probability requirement' at the pleading stage which Iqbal and Twombly explicitly reject." *Id.* at 597. The Federal Rules' "simplified notice pleading standard…merely requires that a complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests…" *Cook v. George's, Inc.*, 952 F.3d 935, 938-39 (8th Cir. 2020) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

"Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555-56. "[A] theory asserted need only be plausible, which requires 'enough fact to raise a reasonable expectation that discovery will reveal evidence of [the conduct alleged].'" *Griner v. King*, 568 F. Supp. 3d 978 (N.D. Iowa 2021) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.).

**B.**     **Infogroup's Burden under Fed. R. Civ. P. 12(b)(1).**

In order for a federal court to have subject matter jurisdiction over a suit, a litigant must have standing under Article III of the Constitution. *Gray v. Wiese*, 8:16CV227, 2016 WL 4487735, at *1 (D. Neb. Aug. 25, 2016) (citing *Iowa League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013)). "To show standing under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Id.* (quoting *Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005)). An injury in fact is a "concrete and particularized" harm that is "actual or imminent, not conjectural or hypothetic." *Id.* (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (citations omitted). Such injury must be "fairly traceable to the challenged action of the defendant." *Id.* (quoting *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 943 (8th Cir. 2006) (citations omitted).

The doctrine of ripeness "flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000) (*Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)). For a federal court to address a question, "there must exist a real, substantial controversy between the parties having adverse legal interests, a dispute definite and concrete, not hypothetical and abstract." *Id.* at 1038. The Supreme Court has instructed that a determination of the ripeness of a dispute requires examination of both the "fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149,

87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)).

"Fitness for judicial decision" is determined by a court's ability to "visit" an issue, and protects "against judicial review of hypothetical or speculative arguments." *Id.* (citing *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 297, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979); *State of Missouri ex rel. Missouri Highway & Transp. Comm'n v. Cuffley,* 112 F.3d 1332, 1337 (8th Cir. 1997)). "The touchstone of a ripeness inquiry is whether the harm asserted has 'matured enough to warrant judicial intervention.'" *Parrish v. Dayton,* 761 F.3d 873, 875–76 (8th Cir. 2014) (citing *Vogel v. Foth & Van Dyke Assocs., Inc.,* 266 F.3d 838, 840 (8th Cir. 2001), quoting therein *Paraquad, Inc. v. St. Louis Hous. Auth.,* 259 F.3d 956, 958 (8th Cir. 2001)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (citing *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998), quoting therein Thom*as v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–81, 1 05 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). "Hardship of the parties" or "harm" relates to "the traditional concept of actual damages—pecuniary or otherwise—and also the heightened uncertainty and resulting modification that may result from delayed resolution." *Id.* (citing *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 733–34, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998)).

## III.    ARGUMENT

### A.    The Court Should Deny Office Depot's Motion to Dismiss Infogroup's Claim for Breach of Contract.

#### 1.    *Infogroup's Complaint States a Claim for Breach of*

**Contract.**

Infogroup's Amended Complaint clearly states a claim for breach of contract. Infogroup's claim for relief is facially plausible because it alleges (1) existence of a valid contract—the Master Client Services Agreement ("MCSA") and Statement of Services #10 ("SOS 10"), (2) Office Depot's actions constituting a material breach, and (3) damages. *See, e.g., Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. Dist. Ct. App. 2013).

Office Depot argues that Infogroup's claim for breach of contract should be partially dismissed because it fails to sufficiently allege that Office Depot engaged in unauthorized use or creation of any derivative works. Specifically, Office Depot argues, by mischaracterizing the language of SOS 10, that the actions constituting breach described in Infogroup's Amended Complaint are actually permitted by SOS 10. Not so.

Infogroup's Amended Complaint attaches SOS 10 and quotes various provisions of the same:

23.     SOS 10 granted Office Depot a limited use, non-exclusive license:

> During the SOS Term, subject to the terms of the [MCSA] and this SOS, [Infogroup] grants [Office Depot] a limited, non-exclusive…license to use the Licensed Data for its own direct marketing and internal research and analytics ("DM License")…The foregoing DM License…[is] subject to the Usage Allowances set forth in this SOS. [Infogroup] is and will remain the sole and exclusive owner of all right, title, and interest in and to the Services and the Licensed Data. Except for the license rights expressly granted in this SOS, nothing in this SOS or the [MCSA] shall be deemed to grant to [Office Depot] any license rights, ownership rights or any other intellectual property rights in the Services or Licensed Data…

> SOS § E.

> ***

25.     The parties placed certain usage allowances based on the DM ("direct marketing") License, as set forth in SOS § F, with additional fees for uses in

excess of the usage allowances. Office Depot was contractually obligated to timely report such uses in the contractually required form, for debits against the allowances.

27.     The usage allowances show that while the DM License permitted "internal research and analytics" such license was limited to direct marketing internal research and analytics by the Marketing Department, that would result in direct marketing uses and thus fees to [Infogroup].

\*\*\*

29.     Pursuant to § G of SOS 10, "[a]ny use of the Licensed Data not expressly authorized in this SOS is strictly prohibited. Without limiting the generality of the foregoing, [Office Depot] is expressly prohibited from:…(iv) using the Licensed Data in any service of product not specifically authorized in this SOS.…"

\*\*\*

32.     Pursuant to § K of SOS 10, "If [Office Depot] has multiple subsidiaries, affiliates or divisions, the use of the Licensed Data is restricted to the entity or division that is a party to the Agreement."

33.     SOS 10 was signed by a representative of Office Depot's Marketing Division.

Filing No. 167, Ex. B.

Office Depot argues that Office Depot is the "Client" under SOS 10, such that use of the Business Database by its Real Estate Department and REC does not constitute breach of contract. Office Depot ignores and provides no argument addressing § K of SOS 10, which, viewed in conjunction with the other provisions and, especially, with the signature of of a representative of Office Depot's Marketing Division, unmistakably limits Office Depot's use of the Business Database to Office Depot's Marketing Department. Further, for avoidance of doubt, SOS 10 refers to the license as the "DM License" or "direct marketing license." Accordingly, any use of the Business Database by any employee or department of Office Depot other than employees of Office Depot's Marketing Division is a clear breach of SOS 10.

Based on the foregoing, Infogroup has adequately plead its claim for breach of contract. Thus, Office Depot's Motion under Rule 12(b)(6) must be denied.

### 2. *In the Event the Court Finds Infogroup's Allegations Insufficient, Infogroup Requests Leave to Amend Its Amended Complaint.*

As set forth above, Infogroup believes it has adequately pled its claims for relief. However, in the event this Court finds that Infogroup's pleading is inadequate, Infogroup requests leave to amend pursuant to Fed. R. Civ. P. 15(a). "The Federal Rules provide that leave to amend a complaint "shall be freely given when justice so requires." *Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055, 1072 (D. Neb. 2016), aff'd 889 F.3d 920 (8th Cir. 2018) (citing Fed. R. Civ. P. 15(a)). "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Id.* (citation omitted). Accordingly, Infogroup requests leave to amend its Amended Complaint in the even the Court finds the allegations in the Amended Complaint deficient.

### B.   Office Depot's Attempts to Re-Litigate Previous Findings Regarding Infogroup's Copyright Claim Are Improper and Should Be Denied.

Infogroup firmly believes that Office Depot is barred from arguing for dismissal of the copyright infringement claim by both the Federal Rules of Civil Procedure and by the United States District Court for the District of Nebraska's prior ruling. *See* Filing No. 39. Unfortunately, and out of an abundance of caution as Infogroup cannot know with certainty how the Court will rule on this issue, Infogroup must address Office Depot's arguments concerning the copyright infringement claim, and does so below.

### 1. *Office Depot's Motion to Dismiss Infogroup's Copyright Infringement Claim for Failure to State a Claim Should Be Denied.*

### a.   Office Depot Is Barred from Raising New Argument That Infogroup's Copyright Claim Fails to State a Claim for Relief.

Office Depot's argument that the copyright infringement claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6) is barred. Fed. R. Civ. P. 12(g)(2) states that, with certain exceptions that are not relevant here, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Accordingly, "if the defendant files a motion to dismiss, and the plaintiff files an amended complaint after that motion has been resolved, the defendant cannot raise defenses in a subsequent motion to dismiss that could have been raised in the earlier motion." Garrett v. Cassity, No. 4:09CV01252 ERW, 2011 WL 3235633, at *3 (E.D. Mo. July 28, 2011) (citing 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 1388 (3d ed. 2002) (quotations omitted)). Office Depot had the opportunity to raise a Rule 12(b)(6) defense pertaining to Infogroup's copyright claim and all attendant arguments when Infogroup first filed its Complaint on March 24, 2020. Filing No. 1. Accordingly, Office Depot's Motion to dismiss the copyright infringement claim for failure to state a claim should be denied.

### b.   Infogroup's Copyright Infringement Claim Is Adequately Pled.

Infogroup's Amended Complaint plainly states a claim for copyright infringement. Infogroup's claim for relief is facially plausible because it alleges (1) ownership of a valid copyright with supporting copyright registrations and (2) that Office Depot copied original elements of Infogroup's U.S. Business Database.

To prevail on copyright infringement, Infogroup must prove, first, "ownership of a

valid copyright," and second, "copying of original elements of the work." *Mulcahy v. Cheetah Learning, LLC*, 386 F.3d 849, 852 (8th Cir. 2004), citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

*Infogroup, Inc. v. DatabaseLLC*, 956 F.3d 1063, 1066 (8th Cir. 2020); *see also Infogroup, Inc. v. DatabaseUSA.com LLC*, 8:14-cv-49, Filing No. 462 at ECF p. 15 (copyright infringement jury instructions) (Gerrard, J.). Infogroup pled a plausible claim for relief.

Infogroup's Amended Complaint describes its copyright interest in its Business Database and attaches three of its copyright registrations in the same. Filing No. 167 at ECF p. 2-3 ¶¶ 6-13, Exs. C-E. Then, Infogroup describes in detail Office Depot's infringing use:

> 58.     Office Depot's Real Estate Division and REC do not perform direct marking functions for Office Depot, and yet Office Depot's Marketing Division used and made and delivered an unauthorized copy of [Infogroup's] entire Business Database for Office Depot's Real Estate Division and REC or otherwise granted Office Depot's Real Estate Division and REC access thereto, to use for non-Direct Marketing purposes.
>
> 59.     In addition to [Infogroup's] entire Business Database, the Real Estate Division imported and otherwise granted the Management Software access to Office Depot's store and company information (e.g., revenue and costs data).
>
> 60. The combination of the Management Software, [Infogroup's] entire US business databases and Office Depot's store and company information, combine to comprise the Mapping Programs (the "Mapping Programs").
>
> 61. The Real Estate Division and the REC then used the Mapping Programs to perform at least the following functions relating to real estate decisions, which had no direct marketing purpose and could not result in a direct marketing use campaign, and thus no license fee accrued to [Infogroup]:
>
> > a.     collect trade area data, business counts by store, and firmographic variables;
> >
> > b.     create maps depicting business points;
> >
> > c.     create spreadsheets, power points, modules, forms and reports like SI forms (store information forms), REC packages for

stores, and Biz Data spreadsheets;

d.      design retail strategy and implementation processes; and

e.      make decisions regarding macrospace and store clustering based on [Infogroup's] firmographic info, to name a few.

62.     Each of these the foregoing functions used and published data from [Infogroup's] Business Database.

63.     Each of these the foregoing functions resulted in the creation of unauthorized derivative works by Office Depot's Real Estate Division and REC.

***

71.     Office Depot's uses of [Infogroup's] Business Database in the Mapping Program constitutes infringements of [Infogroup's] Copyrights.

72.     Office Depot's uses and activities as stated herein constitute copyright infringements in violation of the Federal Copyright Act, 17 U.S.C. § 501.

Filing No. 167. Based on the foregoing allegations, there can be little doubt that Infogroup claims (1) ownership of valid copyrights in its U.S. Business Database and (2) that Office Depot used protected portions of Infogroup's Business Database in its Mapping Programs and created derivative works of the Business Database without Infogroup's authorization.

Office Depot argues that Infogroup does not sufficiently allege that Office Depot copied the U.S. Business Database. Copying can be shown through direct evidence, which is difficult to establish "because it includes evidence such as party admissions, witness accounts of they physical copying, and common errors in the works of plaintiffs and the defendants." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006). But in the absence of direct evidence, copying may be established by proving "(1) that defendants had access to the copyrighted [] work and (2) substantial similarity [between the works at issue]." *Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.*, No. 8:03CV527, 2006 WL 994566, at *3 (D. Neb. Jan. 27, 2006) (citations omitted). *See also*

*Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 967 (8th Cir. 2005) ("By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying.") (quotations omitted).

A plaintiff may establish access "by showing that the defendants had an opportunity to view or copy his work[.]" *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 942 (8th Cir. 1992) (citations omitted). Plaintiffs satisfy this requirement by proving that "defendants had a 'reasonable possibility of viewing [the] work," although mere possibility of access is not sufficient. *Id.* (citing *Ferguson v. Nat'l Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978)). Here, Infogroup has sufficiently plead that Office Depot's Real Estate Department and REC had access to the Business Database, as Infogroup alleged that Office Depot had actual access to the copyrighted works: "Office Depot's Marketing Division used and made and delivered an unauthorized copy of [Infogroup's] entire Business Database for Office Depot's Real Estate Division and REC[.]" Filing No. 167 at ECF p. 10, ¶ 58.

Substantial similarity is substantial similarity of general ideas and expression of those ideas. *Benchmark Homes,* 2006 WL 994566, at *4 ((citing *Taylor Corp.*, 403 F.3d at 966) (quotations omitted)). "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of express is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Id.* (quoting *Taylor Corp.*, 403 F.3d at 966) (quotations omitted)). "Even when the works are dissimilar in many ways, these differences may be immaterial if in other respects plaintiffs can show similarity of a substantial element of their work…[n]o plagiarist can excuse the wrong by

showing how much of his work he did not pirate." *Id.* (citing 3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, § 13.03 at 13–61 to 13–62 (2005)).

A court may determine substantial similarity as a matter of law (*see Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143-44 (8th Cir. 1989)); however, "because substantial similarity "is a close question of fact…summary judgment has traditionally been frowned upon." *Benchmark Homes*, 2006 WL 994566, at *3 (citing *Atkins v. Fischer*, 331 F.3d 988, 994 (D.C.Cir. 2003). It follows that "[t]his preference against resolving substantial similarity on summary judgment logically applies with greater strength against resolving substantial similarity on motions to dismiss for failure to state a claim." *Griner v. King*, 568 F. Supp. 3d at 994. Office Depot has never permitted an audit of its uses of Infogroup's Business Database nor produced its Mapping Programs to allow for a determination of substantial similarity. Thus, a determination as to substantial similarity is not possible or appropriate at this juncture. *See, e.g., Ferman v. Jenlis, Inc.*, 224 F. Supp. 3d 791 (S.D. Iowa 2016) (stating on defendant's motion to dismiss for failure to state a claim that "[h]ere, the Court is in a proper position to determine substantial similarity of expression because the parties have submitted images of the [works] as exhibits to their briefs.").

Office Depot argues that Infogroup improperly framed its allegations of copyright infringement as unauthorized and infringing "use" of Infogroup's copyrighted materials and has not alleged a specific "copy" or creation of any derivative works. However, that argument ignores federal pleading standards: the statement of facts need only "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2, L.E.2d 80(1957)). It is clear on the face of the Amended Complaint that Office Depot created a

derivative work with Infogroup's Business Database.

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101. Infogroup's Amended Complaint details Office Depot's unauthorized creation of a derivative work with its Business Database as follows: "Office Depot used [Infogroup's] Business Database in its Mapping Programs without [Infogroup's] knowledge, consent, or authorization." Filing No. 167 at ECF p. 11, ¶ 65. That Infogroup did not use the phrase "derivative work" is of no moment.

Finally, as discussed below, the infringing activities alleged in Infogroup's Amended Complaint did not fall within the scope of Office Depot's license.

### 2.   *Infogroup Has Article III Standing to Pursue a Copyright Claim and This Issue Is Ripe for Adjudication.*

Infogroup has met its burden under Fed. R. Civ. P. 12(b)(1) to establish subject matter jurisdiction, because Infogroup has demonstrated that it has Article III standing to pursue a copyright claim and because its claim for copyright infringement is ripe.

Infogroup's copyright claim is not "merely hypothetical," as Office Depot suggests. Infogroup does not believe, nor has it ever stated, that it may not have a copyright claim. Instead, Infogroup has consistently maintained that, despite Office Depot's attempts to conceal and obfuscate its use of the U.S. Business Database, Office Depot's actions amount to an actionable copyright infringement. This sentiment has never changed and is repeated throughout recent filings. *See, e.g.,* Filing No. 135 at ¶ 4 ("Based on Mr. Padmanabhan's testimony…Office Depot used Infogroup's Business Database in third

party software in order to conduct its real estate research and analytics.").

What ***has*** changed is that, since filing its Complaint in March of 2020, Infogroup discovered that it has an actionable breach of contract claim, in addition to its copyright claim. *See, e.g.,* Filing No. 131 at ¶ 5 ("Infogroup now believes its claims might be properly framed as either breach of contract or copyright infringement—it has not made that final determination."); Filing No. 135 at ¶ 6 ("At the time it filed its original complaint, Infogroup believed Office Depot's incorporation of Infogroup's Business Database into software was clearly a copyright claim to the exclusion of a claim for breach of contract, so that is the claim it pleaded."). Certainly, Infogroup's steadfast allegations of copyright infringement are reflected throughout Infogroup's Amended Complaint. *See* Filing No. 167, *passim.*

At no point in the Amended Complaint does Infogroup complain of some prospective injury or impending copyright infringement. Instead, Infogroup alleges, unequivocally, that "Office Depot's Marketing Division ***used and made and delivered*** an unauthorized copy of [Infogroup's] entire Business Database" and that then Office Depot's Real Estate Division and REC used the Business Database for a variety of functions, which "***resulted*** in the creation of unauthorized derivative works[,]" which "constitute[] infringements of [Infogroup's] Copyrights." Filing No. 167 at ECF pp. 10-12, ¶¶ 58, 61-63, 71 (emphasis added). Further, Infogroup claims that it "has been damaged and may continue to be damaged" by Office Depot's infringing actions and that such actions "have caused irreparable harm, and…will continue to cause irreparable injury and other damages[.]" *Id.* at ECF p. 12, ¶¶ 70, 73. The damages that Infogroup alleges to have suffered, and the actions of Office Depot that Infogroup claims are responsible, have already occurred and continue to occur.

Thus, Infogroup's claimed injury is not "conjectural" or "hypothetical." The Court should accordingly deny Office Depot's motion to dismiss for lack of Article III standing.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Infogroup, Inc. respectfully requests that the Court enter an Order denying Defendant Office Depot, Inc.'s Motion, ordering Office Depot to answer the Amended Complaint within 14 days of such Order, and awarding such further relief as the Court deems just and equitable.

Dated: March 17, 2023

INFOGROUP INC., Plaintiff,

By: /s/Anthony M. Lawhon, Esq.
       Anthony M. Lawhon, Esq.
       Anthony M. Lawhon, P.A.
       3003 Tamiami Trail N., Suite 200
       Naples, FL 34103
       (239) 325-8956
       (239) 236-3300 (fax)
       TonyLawhon@lawhon-law.com

And

       Gregory C. Scaglione (*pro hac vice pending*)
       KOLEY JESSEN P.C., L.L.O.
       One Pacific Place, Suite 800
       1125 South 103rd Street
       Omaha, NE 68124-1079
       (402) 390-9500;
       (402) 390-9005 (facsimile)
       greg.scaglione@koleyjessen.com

       *Attorneys for Plaintiff Infogroup Inc.*

## CERTIFICATE OF SERVICE

On this 17th day of March, 2023, a true and correct copy of the foregoing was filed

with the Clerk of the Court via CM/ECF, and copies were served by electronic mail to the

following:

Mark R. Cheskin
HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
mark.cheskin@hoganlovells.com

Damon M. Lewis, Esq.
Anna Kurian Shaw, Esq.
Lauren B. Cury, Esq.
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
damon.lewis@hoganlovells.com
anna.shaw@hoganlovells.com
lauren.cury@hoganlovells.com

/s/ Anthony M. Lawhon, Esq.
Anthony M. Lawhon, Esq.