UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80358-CIV-CANNON

**INFOGROUP INC.**,

    Plaintiff,

v.

**OFFICE DEPOT, INC.**,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND CLOSING CASE

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") [ECF No. 209], filed on March 15, 2023. The Court has reviewed the Amended Complaint [ECF No. 167], the Motion, Plaintiff's Response in Opposition [ECF No. 213], Defendant's Reply [ECF No. 215], and the full record. For the reasons set forth below, Defendant's Motion to Dismiss [ECF No. 209] is **GRANTED**.

### RELEVANT BACKGROUND

This commercial dispute comes to this Court following a lengthy procedural history in the District of Nebraska, including an initial Motion to Dismiss and to Compel Discovery [ECF No. 14] and over a year of discovery proceedings. At issue now is Defendant's Motion to Dismiss the Amended Complaint, which marks the second round of Rule 12(b)(6) briefing following Plaintiff's Amended Complaint, filed on August 16, 2022 [ECF No. 163], prior to transfer to this Court.[1]

---

[1] This case was transferred to this Court and assigned to the undersigned on March 6, 2023 [ECF Nos. 198, 199].

The facts in this section are drawn from Plaintiff's Amended Complaint [ECF No. 167] and are accepted as true for purposes of this Order.

Plaintiff Infogroup, Inc. ("Plaintiff" of "Infogroup") brings two causes of action against Defendant, Office Depot, Inc. ("Defendant" or "Office Depot"): (1) Copyright Misappropriation, in violation of 17 U.S.C. § 501 ("Count I") [ECF No. 167 ¶¶ 54–74], and (2) Breach of Contract under Florida law ("Count II") [ECF No. 167 ¶¶ 75–82]. In support of its claims, Plaintiff attaches to the Amended Complaint (1) three copyright registrations [ECF Nos. 167-1, 167-2, 167-3], and (2) a Master Client Services Agreement and Statement of Services entered into between Office Depot, Inc. and Infogroup, Inc. (referred to herein as the "Licensing Agreement") [ECF Nos. 168, 169]. In relevant part, and as quoted in the Discussion section of this Order, the parties' Licensing Agreement, specifically the "Licenses" provision, permits Defendant to use the Licensed Data (Plaintiff's copyrighted database) for "direct marketing and internal research and analytics" [ECF No. 169 p. 2 (Section E "Licenses")].

Plaintiff's Amended Complaint alleges that Plaintiff sold Defendant its copyrighted database, which contains "demographic, marketing and other related information on approximately 15 million active U.S. Businesses," and "goes far beyond the mere gathering, copying, and pasting of third-party data" (referred to herein as the "Licensed Data") [ECF No. 167 ¶¶ 9, 13]. Some of the Licensed Data is "not obtained from any outside source, but predicted or created by [Plaintiff] using its highly selective and creative business judgments" [ECF No. 167 ¶ 11]. Pursuant to the parties' Licensing Agreement, Defendant "secured a limited, non-exclusive license of [Plaintiff's] complete U.S. Business Database, which Office Depot was authorized to use for direct marketing research and direct marketing related analytics" [ECF No. 167 ¶ 14].

Thus, as agreed to by the parties, Defendant obtained full electronic copies of the database between May 25, 2017, and April 3, 2019, via transfers made to it by Plaintiff [ECF No. 167 ¶ 42].

Plaintiff contends that Defendant infringed upon its copyrights by using the Licensed Data to allow its Real Estate Department to conduct real estate research and analytics—research that Plaintiff alleges exceeded the scope of the Licensing Agreement [ECF No. 167 ¶ 43]. Specifically, Plaintiff alleges that Defendant's Real Estate Department used the Licensed Data to "create maps depicting business points for the purpose of making real estate decisions"; "design retail strategy and implementation processes"; "create spreadsheets, power points, modules, forms[,] and reports"; and "make decisions regarding potential new store locations" [ECF No. 167 ¶ 46]. According to Plaintiff, this use of its Licensed Data was not authorized by the parties' Licensing Agreement because Defendant used the Licensed Data for real estate research, not just direct marketing [ECF No. 167 ¶ 47]. Plaintiff also argues that Defendant's actions not only infringed upon its copyright but also breached the parties' contract; thus, Plaintiff brings a separate breach of contract claim against Defendant, alleging that Defendant used the Licensed Data in a manner not permitted by the parties' agreement [ECF No. 167 ¶¶ 78–82].

Following Plaintiff's filing of the Amended Complaint, Defendant filed its initial Motion to Dismiss the Amended Complaint seeking dismissal of the Amended Complaint, or in the alternative, requesting transfer of the case to the U.S. District Court for the Southern District of Florida [ECF Nos. 180, 181]. Following briefing of the Motion [*see* ECF Nos. 193, 194], Senior Judge Joseph F. Bataillon of the U.S. District Court for the District of Nebraska granted in part Defendant's initial Motion to Dismiss and transferred this case to this district [ECF Nos. 196, 199]. Because portions of Defendant's initial Motion to Dismiss the Amended Complaint [ECF No. 180] remained unresolved [ECF No. 206], the Court permitted Defendant to refile the remaining

contested portion of its Motion to Dismiss the Amended Complaint in this Court [ECF No. 208]. On March 15, 2023, Defendant filed the instant Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 209], and the Court held a hearing on the Motion on May 11, 2023 [ECF No. 220; ECF No. 221 (Transcript)]. The Motion is ripe for adjudication [ECF Nos. 209, 213, 215].

## LEGAL STANDARD

Rule 8(a)(2) requires complaints to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 545). Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## DISCUSSION

Defendant seeks dismissal of both counts in the Amended Complaint: (1) copyright infringement [ECF No. 167 ¶¶ 54–74] and (2) breach of contract [ECF No. 167 ¶¶ 75–82]. As to Plaintiff's copyright infringement claim, Defendant argues that (1) Plaintiff fails to state a claim upon which relief can be granted because the parties' Licensing Agreement permitted Defendant to use the Licensed Data in the manner that it did [ECF No. 209 pp. 6–10, 15–16; ECF No. 221 p. 5], and (2) Plaintiff lacks Article III standing because Plaintiff's briefing and pleadings over the

course of the litigation in the District of Nebraska, starting first with a copyright theory and now including a claim for breach of contract, indicates that Plaintiff remains in the process of identifying the harm it allegedly suffered at the hands of Defendant's use of the Licensed Data [ECF No. 209 pp. 15–16; *see* ECF No. 221 pp. 4, 8–14]. As to Plaintiff's breach of contract claim, Defendant advances the same basic argument it raises in defense of Plaintiff's copyright claim— that any claim of unauthorized use of the Licensed Data by Office Depot's Real Estate Department for real estate research and analysis fails as a matter of law because the Licensing Agreement specifically permits such use [ECF No. 209 p. 11].

### A. Article III Standing

Turning first to the issue of Article III standing as clarified by Defendant during the hearing [ECF No. 221 p. 12], the Court determines that Plaintiff has Article III standing to raise the claims asserted. For a plaintiff to have standing to sue in federal court, it must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury suffered by a plaintiff must be "concrete and particularized" and well as "actual or imminent," as opposed to merely "conjectural" or "hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

As Defendant essentially acknowledged at the hearing based on the allegations in the Amended Complaint [ECF No. 221 pp. 12–13], Plaintiff has alleged a sufficiently concrete and non-speculative injury to satisfy Article III; as averred, Defendant "used and made and delivered an unauthorized copy" of Plaintiff's Licensed Data to Defendant's Marketing Department, which Plaintiff contends was not permitted by the parties' agreement and resulted in irreparable harm [ECF No. 213 p. 19; *see* ECF No. 167 ¶¶ 58, 61–63, 70–71, 73; ECF No. 221 p. 25]. This is

sufficient to establish that Plaintiff has standing to bring its copyright infringement and breach-of-contract claims. The fact that Plaintiff, during the course of discovery and repleading, expanded its legal theory of liability to include a breach of contract claim and continued to search for precision in discovery about the full scope of its legal theories, is not a reason under Article III, at least on this record, to defeat Plaintiff's specific allegations of harm in the Amended Complaint.

### B. Copyright Claim

The Court now turns to discuss the merits of Plaintiff's claim under the federal Copyright Act. 17 U.S.C. § 501. Generally, "[t]he Copyright Act is intended to protect copyright holders from unconsented-to pirating" of their works by individuals who do not pay for "the full value of the works used." *MCA Television Ltd. v. Pub. Int. Corp.*, 171 F.3d 1265, 1275 (11th Cir. 1999). "When copyright holders agree to license their products in exchange for a fee, however, they have entered the realm of legally enforceable contracts, and have represented as much to their contractual counterparts." *Id.* Thus, licensed use of another copyright does not amount to a copyright violation unless licensees "use materials in ways that exceed the scope of their licenses." *Id.*; *see also Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46, 52 (D.D.C. 2015) ("Only where 'a license is limited in scope and the licensee acts outside the scope' can 'the licensor . . . bring an action for copyright infringement.'" (quoting *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008)).

The parties do not dispute, and the Court agrees, that the Court must interpret the plain meaning of the Licensing Agreement to determine whether Defendant's use of the Licensed Data for real estate research fell within the scope of its license.

The pertinent Licenses provision in the Licensing Agreement (referred to herein as "Section E"), entered into by Office Depot, Inc. and Infogroup Inc., is reproduced below in full:

> During the SOS Term, subject to the terms of the Agreement and this SOS, Company grants Client a limited, non-exclusive, world-wide, non-transferable ***license to use the Licensed Data for its own direct marketing and internal research and analytics*** ("DM License"). In addition to the OM License, during the SOS Term, subject to the terms of the Agreement and this SOS, Company grants Client a non-exclusive, non-transferable limited, world-wide license to use the Licensed Data in order to onboard and create unique digital audiences for executing Client's own digital display campaigns ("Digital License"). The foregoing DM License and Digital License each are subject to the Usage Allowances as set forth in this SOS. Company is and will remain the sole and exclusive owner of all right, title, and interest in and to the Services and Licensed Data. Except for the license rights expressly granted in this SOS, nothing in this SOS or the Agreement shall be deemed to grant to Client any license rights, ownership rights or any other intellectual property rights in the Services or Licensed Data. All rights in and to the Licensed Data not expressly granted to Client herein are hereby reserved by Company.

[ECF No. 169 p. 2 (emphasis added)].

Applying that language, Defendant submits that its use of the Licensed Data for real estate research by Office Depot's Real Estate Department was clearly permitted by the plain terms of the licensing agreement and therefore did not violate Plaintiff's copyright [ECF No. 209 p. 7 ("Plaintiff fails to state a claim for copyright infringement because . . . all of the allegedly infringing activities fell within the scope of Office Depot's license.")].[2] That language, Defendant argues, broadly provides a license "to use the Licensed Data for its own direct marketing and internal research and analysis"—without restriction on the Real Estate's Department use of the Licensed Data (as distinct from Home Depot's Marketing Department only), and without limitation to direct marketing purposes only (as opposed to "direct marketing and internal research and analytics") [ECF No. 209 pp. 11–13].

Plaintiff attempts to restrict the broad language in the Licensing Agreement, arguing that, when "viewed in conjunction with the other provisions, and especially, with the signature of a

---

[2] There is no dispute that Plaintiff owns a valid copyright over the Licensed Data [ECF No. 167 ¶¶ 55–57].

representative of Office Depot's Marketing Division, [Section E] unmistakably limits Office Depot's use of the [Licensed Data] to Office Depot's Marketing Department" [ECF No. 213 p. 11]. Plaintiff also contends that the Licensing Agreement "refers to the license as the 'DM License' or 'direct marketing license,'" and thus, "any use of the [Licensed Data] by any employee or department of Office Depot other than employees of Office Depot's Marketing Division" is beyond the scope of the license granted to Defendant [ECF No. 213 p. 11].

Upon review, the Court agrees that Defendant's reading of the Licensing Agreement comports with the ordinary meaning of the language in the Agreement, which does not restrict Defendant's use of the Licensed Data as Plaintiff suggests. As quoted above, Section E grants Defendant "a limited, non-exclusive . . . license to use the Licensed Data for its own direct marketing and internal research and analytics ('DM License')" [ECF No. 169 p. 2]. Contrary to Plaintiff's suggestion [ECF No. 213 p. 11], this language contains no limit on which subsidiary division/department within Office Depot may use the license, and indeed the parties to the Agreement are Office Depot, Inc. and Infogroup, Inc.—not particular departments [ECF No. 169 p. 1]. Nor does Section E restrict the term "direct marketing and internal research and analytics" to "direct marketing only." Although Section E contains a reference to "DM License" in parenthesis after the pertinent language, that parenthetical cannot fairly be read to limit the terms of the license granted, which clearly encompasses "direct marketing *and* internal research *and* analytics," without further restriction [ECF No. 169 p. 2 (emphases added)]. "'Where the parties to a contract take pains to define a key term specially, their dealings under the contract are governed by that definition.'" *Fla. Inv. Grp. 100, LLC v. Lafont*, 271 So. 3d 1, 5 (Fla. Dist. Ct. App. 2019) (quoting *In re Blinds to go Share Purchase Litig.*, 443 F.3d 1, 7 (1st Cir. 2006))); *see also id.* ("[W]here an agreement specifically sets forth defined terms, these contractual definitions

will control."). That is the case here. Yet Plaintiff essentially asks the Court to discard portions of the license language to arrive at a narrower license for direct marketing purposes only. The Court deems that position contrary to the plain language of Section E and declines to adopt it [*see* ECF No. 215 p. 6].[3]

Accordingly, for purposes of Plaintiff's copyright claim, Defendant did not undertake an unauthorized use of the Licensed Data as a matter of copyright law. Count I is due to be dismissed on this basis alone.[4]

Because the basis of this Court's jurisdiction is the asserted violation of the federal Copyright Act, and because this Court now has determined that the copyright violation cannot be maintained in light of the terms of the Licensing Agreement, the Court declines to exercise supplemental jurisdiction over Count II of the Amended Complaint. This Order is limited to the sole federal claim at issue—copyright misappropriation in violation of 17 U.S.C. § 501—and does not purport to decide any claim that Plaintiff may have in state court on a different theory.

---

[3] Plaintiff's allegations in the Amended Complaint reference Defendant's Real Estate Department contacting Plaintiff and requesting "a quote for licensing the Business Database for real estate research and analytics," thereby suggesting that Defendant knew its Real Estate Division was not authorized to use the Licensed Database [ECF No. 167 ¶¶ 35–37]. No agreement, however, was formed between Plaintiff and the Real Estate Department following that proposal [ECF No. 167 ¶ 37]. The Court finds these allegations relate most appropriately to Plaintiff's breach of contract claim. Nevertheless, the allegations relating to Defendant's conduct or state of mind following formation of the parties' Licensing Agreement does not provide a basis to alter the plain meaning of the parties' Licensing Agreement.

[4] In light of the Court's determination, for purposes of Plaintiff's copyright claim, that Defendant's use of the Licensed Data did not exceed the scope of the Licensing Agreement, the Court need not address Defendant's argument that Count I should be dismissed for failure "to state a claim for copyright infringement due to [Plaintiff's] pleading deficiencies" [ECF No. 209 pp. 7–10].

CASE NO. 23-80358-CIV-CANNON

## CONCLUSION

For the reasons discussed, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [ECF No. 209] is **GRANTED**.

2. Plaintiff's Amended Complaint [ECF No. 167] is **DISMISSED**.

3. Although Plaintiff requests leave to amend in generalized terms [ECF No. 213 p. 12], Plaintiff does not explain what it could add or supplement to its current pleading to warrant repleading of Count I, and the Court finds that any repleading of Count I would be futile in any event for the reasons stated in this Order. *See generally Sibley v. Lando*, 437 F.3d 1067, 1073 (11th Cir. 2005).

4. As stated in the Order, absent a viable copyright claim, the Court declines to exercise supplemental jurisdiction over Count II.

5. This Order is without prejudice to Plaintiff's assertion of any state law theories in state court as permitted by law.

6. The Clerk of Court is directed to **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 20th day of June 2023.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record