**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

_____

INFOGROUP, INC.,

      Plaintiff,

      v.

OFFICE DEPOT, INC.,

      Defendant.

_____

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 9:23-cv-80358-AMC

**OFFICE DEPOT'S VERIFIED MOTION FOR FEES AND EXPENSES**
**AND INCORPORATED MEMORANDUM OF LAW**

Mark R. Cheskin, Esq.
Fla. Bar No. 708402
Hogan Lovells US LLP
600 Brickell Avenue, Suite 2700
Miami, Florida 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
mark.cheskin@hoganlovells.com

Damon M. Lewis (*pro hac vice*)
Celine Jimenez Crowson (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
Lauren B. Cury (*pro hac vice*)
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
damon.lewis@hoganlovells.com
celine.crowson@hoganlovells.com
anna.shaw@hoganlovells.com
lauren.cury@hoganlovells.com

*Attorneys for Office Depot, Inc.*

Dated: August 21, 2023

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

LEGAL STANDARD............................................................................................................8

ARGUMENT........................................................................................................................8

I.      Office Depot is Entitled To Attorneys' Fees and Costs under the Copyright Act............9

      A.     Office Depot is the Prevailing Party. ..................................................................9

      B.     Infogroup's Copyright Claim was Objectively Unreasonable and Frivolous.....10

      C.     Infogroup's claim also rises to the level of frivolousness..................................11

      D.     Infogroup's Motivation was Improper................................................................11

      E.     A Fee Award will Advance Considerations of Compensation and Deterrence..11

II.     Attorneys' Fees. ..............................................................................................................12

      A.     Office Depot's Expenditure of 3148.6 Hours was Reasonable. ........................13

      B.     Office Depot's Rates are Reasonable. ...............................................................14

      C.     Office Depot Experienced a Complete Success in this Litigation.....................19

      D.     Office Depot is Entitled to its Costs Incurred in the Course of this Litigation...20

CONCLUSION....................................................................................................................20

CERTIFICATE OF GOOD FAITH CONFERRAL................................................................20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Amadasun v. Dreamworks LLC*,
  359 F.Supp.2d 1367 (N.D. Ga. 2005) ...............................................................12

*Am. Civil Liberties Union of Georgia v. Barnes*,
  168 F.3d 423 (11th Cir. 1999) ................................................................ *passim*

*Baker Botts L.L.P. v. ASARCO LLC*,
  135 S.Ct. 2158 (2015)...............................................................................8

*Blum v. Stenson*,
  465 U.S. 886 (1984)...........................................................................13, 14

*BMG Rights Management v. Cox Communications*,
  234 F. Supp. 3d 760 (E.D. Va. 2017) ...............................................................19

*Brooks v. Georgia. State Bd. of Elections*,
  997 F.2d 857 (11th Cir. 1993) ....................................................................15

*Caracol Television, S.A. v. Telemundo Television Studios, LLC*,
  No. 18-23443-CIV-GAYLES/OTAZO-REYES, 2022 WL 17583608
  (S.D. Fla. Aug. 4, 2022).......................................................................10, 11

*CBS Broad., Inc. v. Browning*,
  No. 06-22463-CIV, 2007 WL 2850527 (S.D. Fla. Sept. 21, 2007).....................................13

*CCUR Aviation Finance LLC v. South Aviation Inc.*,
  No. 21-cv-60462-BLOOM/Valle2022 WL 10042962 (S.D. Fla. Oct. 14, 2022)................................14

*Cohen v. Va Elec. & Power Co.*,
  617 F. Supp. 619 (E.D. Va. 1985) .................................................................11

*Corwin v. Walt Disney World Co.*,
  No. 6:02-cv-1377-Orl-19KRS, 2008 WL 754697 (M.D. Fla. Mar. 18, 2018) ...............................11

*CRST Van Expedited Inc. v. E.E.O.C.*,
  578 U.S. 419 (2016)................................................................................9

*Cuban Museum of Arts and Culture Inc. v. City of Miami*,
  771 F. Supp. 1190 (S.D. Fla. 1991) ...............................................................16

*E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs*,
  724 F.3d 561 (4th Cir. 2013) .....................................................................19

ii

*Environmental Manuf. Sols., LLC v. Peach State Labs, Inc.*,
    274 F. Supp. 3d 1298 (M.D. Fla. 2017) .........................................................................16, 18

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ...................................................................................................8, 12

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...................................................................................................2, 20

*Infogroup, Inc. v. DatabaseUSA.com LLC*,
    No. 8:14-CV-49, 2018 WL 6624217 (D. Neb. Dec. 18, 2018) ....................................17, 19

*Johnson v. Georgia Highway Express Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...........................................................................15, 16, 18, 19

*Kelly v. Lee County RV Sales Co.*,
    No. 8:18-cv-424-T-27JSS, 2021 WL 679258 (M.D. Fla. Feb. 22, 2021).............................9

*Kirtsaeng v. Jon Wiley and Sons Inc.*,
    579 U.S. 197 (2016).........................................................................................................8

*Korman v. Iglesias*,
    No. 18-CV-21028, 2018 WL 6978693 (S.D. Fla. Dec. 6, 2018) ..................................1, 9, 12

*Lil' Joe Wein Music, Inc. v. Jackson*,
    No. 06-20079-CIV, 2008 WL 2688117 (S.D. Fla. July 1, 2008) ................................. *passim*

*Loranger v. Stierheim*,
    10 F.3d 776 (11th Cir. 1994) ..........................................................................................12

*Lorillard Tobacco Co. v. California Imports, LLC*,
    No. 3:10CV817-JAG, 2012 WL 5423830 (E.D. Va. Nov. 6, 2012)....................................16

*Lowe v. Loud Records*,
    No. 01-1797, 2004 WL 527831 (E.D. Pa. Nov. 20, 2023) ...................................................11

*Norman v. Housing Authority of City of Montgomery*,
    836 F.2d 1292 (11th Cir. 1988) ...........................................................................12, 14, 15, 19

*Oravec v. Sunny Isles Luxury Ventures L.C.*,
    No. 04-c-227870-CIV, 2010 WL 1302914 (S.D. Fla. Mar. 31, 2010) .................................11

*Oravec v. Sunny Isles Luxury Ventures L.C.*,
    No. 04-22780-CIV, 2009 WL 6337121 (S.D. Fla. Jan. 12, 2009)........................................12

*Page v. Va. State Bd. of Elections*,
    No. 3:13-cv-678, 2015 WL 11256614 (E.D. Va. Mar. 10, 2015) ........................................16

*Prison Legal News v. Inch*,
    411 F. Supp. 3d 1198 (N.D. Fla. 2019)...................................................................15

*Prof'l LED Lighting, Ltd. v. AAdynTech., LLC*,
    88 F. Supp. 3d 1356 (S.D. Fla. 2015) ................................................................1, 8

*Royal Palm Properties, LLC v. Pink Palm Properties, LLC*,
    38 F.4th 1372 (11th Cir. 2022) .............................................................................9

*Sanders v. Union Pacific Railroad Company*,
    No. 4:20CV3023, 2022 WL 3445798 (D. Neb. Aug. 17, 2022)..........................18

*Spurlock v. Complete Cash Holdings, LLC*,
    540 F.Supp.3d 1201 (N.D. Ga. May 14, 2021)............................................15, 16

*Superior Form Builders v. Dan Chase Taxidermy Supply Co.*,
    881 F. Supp. 1021 (E.D. Va. 1994) ....................................................................19

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
    846 F.3d 1159 (5th Cir. 2017) ..........................................................................2, 9

## Statutes

17 U.S.C. § 505...............................................................................................................1, 8

**INTRODUCTION**

Defendant Office Depot, Inc. ("Office Depot") is the prevailing party in this case brought by Plaintiff Infogroup, Inc. ("Infogroup"). As the prevailing party, Office Depot is entitled to an award of reasonable fees and costs for defense of Infogroup's copyright claim. Office Depot hereby moves for attorneys' fees and costs pursuant to 17 U.S.C. § 505 and L.R. 7.3(a).

Section 505 of the Copyright Act allows the court to "award reasonable attorney's fees to the prevailing party as part of the costs." 17 U.S.C. § 505. "[I]n copyright cases, although attorneys' fees are in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *Prof'l LED Lighting, Ltd. v. AAdynTech., LLC*, 88 F. Supp. 3d 1356, 1376 (S.D. Fla. 2015). And, "[w]here a defendant prevails in a copyright case, there is a strong presumption in favor of awarding fees." *Korman v. Iglesias*, No. 18-CV-21028, 2018 WL 6978693, at *2 (S.D. Fla. Dec. 6, 2018) (citing *Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117, at *4 (S.D. Fla. July 1, 2008)). Factors courts consider in determining whether to exercise that discretion include: frivolousness, motivation, objective unreasonableness of the losing party's factual and legal positions, and whether an award of attorneys' fees will further the goals of the Copyright Act. Here, Infogroup was aware, before filing suit, that it had granted a license to Office Depot to use the copyrighted works. Infogroup claimed that Office Depot's use exceeded its rights, but as the Court found in its June 20, 2023 Opinion, Infogroup's claim was premised on a "position contrary to the plain language of" the license, and "the ordinary meaning of the language in the Agreement […] does not restrict Defendant's use of the Licensed Data as Plaintiff suggests." (Doc. No. 222 ("June 20, 2023 Order") at 8, 9.) Infogroup's copyright claim was frivolous and objectively unreasonable, and an award of fees will further the goals of the Copyright Act by deterring plaintiffs like Infogroup from pursuing such unreasonable claims.

For these reasons, and those below, Office Depot is entitled to $2,024,180.38 in attorneys' fees incurred in this action, and $40,241.12 in costs.[1]

## **BACKGROUND**

Infogroup filed this case on March 20, 2020, arguing that Office Depot's uses of Infogroup's database was unauthorized. While Infogroup's original Complaint was unclear, Infogroup clarified during the motion to dismiss phase in 2020 that the allegedly unauthorized use was that Office Depot had made software using its database. But Infogroup had no basis for this allegation, and subsequently pivoted to a new argument that the license was limited to a particular Office Depot division—an argument this Court expressly rejected.

Office Depot had paid a significant sum for the right to use the Infogroup data for "internal research and analytics." (Doc. No. 169 (Amended Complaint Exhibit B, hereinafter "SOS-10").) The Court's reading of the contract as affirming Office Depot's license to use the Infogroup data for "internal research and analytics" was the central holding of the Court's June 20, 2023 opinion, and as the facts bear out, Infogroup knew this before it ever brought suit. June 20, 2023 Order; *see, e.g.,* Ex. D (INFOGROUP00398).

Infogroup's document production made clear that even its own employees knew that Office Depot had the right to use the database for "internal research and analytics" and that its activity was within this licensed use. Indeed, as these documents show, Infogroup's personnel endorsed and even bragged about Office Depot's use in this way in the years leading up to this litigation.

---

[1] Although the Court declined to exercise supplemental jurisdiction over Infogroup's contract claim, Office Depot's defense against that claim was limited to the same license defense for Infogroup's copyright claim. Accordingly, all of Office Depot's billed time in this matter related to defense against Infogroup's copyright claim. *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163-64 (finding plaintiff was entitled to fees for copyright claims on top of fees for its breach of contract claims where the copyright claims arose directly out of plaintiff's contract with defendant) (internal quotations omitted); *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (recognizing that in some cases, a lawsuit cannot be viewed as a series of discrete claims).

In **August 2018**, Infogroup personnel sent no fewer than six (6) emails touting Office Depot's licensed use of the Infogroup data for internal research and analytics. *See* Doc. No. 157 at 2, Doc. No. 157-2 at 5-10. These emails noted that Infogroup "currently partner[s] with a few teams at Office Depot (Mukund/Market Research as well as the Business Pros)" and that "the Market Research team has found our data essential in site and market selection." *Id.*

On **May 2, 2019**, ten months before filing suit, Infogroup's Director of Sales Operations fielded an end-of-contract discussion with Infogroup's Office Depot account representatives. Ex. D. The Director of Sales gave her interpretation, stating unequivocally that contracts SOS-9 and SOS-10 gave Office Depot three distinct rights: "a. a. Office Depot Direct Marketing (Both SOS'), b. b. Internal research and analytics (Both SOS'), c. c. Onboarding and creation of unique digital audiences for digital display campaigns (SOS No. 10 Only)". *Id.* Therefore, Infogroup at all times pertinent knew that Office Depot had a right to use Infogroup's data for internal research and analytics *separately and additionally* to its right to use the data for direct marketing. Further, these documents memorializing Infogroup's internal communications made clear that it was aware that Office Depot, per the contract's terms, had returned and/or destroyed Infogroup's database from its systems prior to the end of the contract. But Infogroup sued Office Depot anyway.

On **March 20, 2020**, Infogroup filed suit. Despite being aware of the contract allowing Office Depot to use the database for "internal research and marketing," Infogroup's complaint made no mention of the contract. Office Depot was forced to spend the next 3 years clearing its name, reiterating throughout that the contract licensed Office Depot to use the Infogroup data for "internal research and analytics" – exactly the terms noted by the Court in dismissing the case.

On **June 8, 2020**, in its first responsive pleading, Office Depot immediately moved to dismiss, reminding Infogroup and informing the Court that it had a contract with Infogroup that

explicitly allowed "internal research and analytics." *See* Doc. No. 15 at 5-6. Indeed, Infogroup had been aware that the purpose for the contract was to allow Office Depot to perform "internal research and analytics." Doc. No. 25 (Decl. of Mukund Padmanabhan) at ¶ 11 ("Both Office Depot and Infogroup believed that Office Depot's use of the data was for internal research and analytics, in line with the contract's terms. Infogroup knew of Office Depot's intended use because I told them this was our intended use."). In response, Infogroup admitted on **July 13, 2020** that the MCSA granted Office Depot "license to use the Licensed Data for its own direct marketing and internal research and analytics." Doc. No. 33 at ¶ 15-18 (Declaration of Infogroup's Amit Khanna). Infogroup's brief in opposition said nothing about its later failed argument that the MCSA was limited to Office Depot's Marketing Division because Office Depot's signatory was part of that division, and even argued that because it had not mentioned the MCSA in its complaint, the Court should ignore the mediation clause of the MCSA. *See* Doc. No. 31.

On **January 8, 2021**, Office Depot filed an Answer and Counterclaims again informing Infogroup and the Court that "per the terms of its contract, 'Office Depot expressly licensed the Licensed Data from Infogroup 'for its own direct marketing and internal research and analytics.'" Doc. No. 47 at ¶ 44. In its own Answer, Infogroup admitted this on **January 29, 2021**, stating "Infogroup admits that SOS-10 provides, 'Company grants Client a limited non-exclusive, world-wide, non-transferable license to use the licensed Data for its own direct marketing and internal research and analytics ("DM License").'" Doc. No. 52 at ¶ 44; *see also* SOS-10.

On **February 11, 2021**, Office Depot reiterated in its Rule 26(f) filing that "there is no infringement of any copyright owned by Plaintiff, because any use by Office Depot of Plaintiff's proprietary material(s) was pursuant to valid license." Doc. No. 53 at 4.

On **March 12, 2021**, Office Depot informed Infogroup in its first Interrogatory response that it "did not develop a software program that incorporates or uses Infogroup's Business Database," that it had "deleted and/or otherwise destroyed all versions of Infogroup the Business Database," and that it had provided certifications as to such deletion and/or destruction. Ex. G.

On **January 12, 2022**, Infogroup took the deposition of Mukund Padmanabhan, who confirmed that Office Depot had not made any software using Infogroup's database. Ex. H at 39:3-7. He also confirmed that "Market Research" is "Real estate research," elucidating for Infogroup that when negotiating with Office Depot market research personnel (David Dickson and Mukund Padmanabhan) Infogroup was necessarily negotiating for "real estate research." *Id.* at 37:6-22. Infogroup nevertheless continued pursing a copyright claim against Office Depot.

On **February 25, 2022**, after the Padmanabhan deposition, Office Depot wrote Infogroup confirming that the Padmanabhan deposition quelled all doubt that Office Depot had committed a violation of Infogroup's copyright, and presented a catalog of other exculpatory evidence found in Infogroup's own productions. *See* Ex. I. Office Depot further warned Infogroup that if it continued to press its copyright claim, Office Depot would ultimately be entitled to its attorneys' fees. *Id.* at 10-11. Office Depot offered to settle under condition that Infogroup dismiss this case with prejudice and pay Office Depot "a substantial portion of the attorneys' fees Office Depot [had] accrued." *Id*. In fact, Office Depot had asked for just over half of the $1,081,048.50 in fees accrued by that date. Infogroup rejected approximately one hour later without providing reason.

On **April 22, 2022**, Infogroup moved to amend its Complaint, finally revealing to the Court that which Office Depot had explained all along – that there was a contract, and that contract allowed for Office Depot to use Infogroup's database for "internal research and analytics." On **May 6, 2022**, Office Depot opposed the motion in part due to futility, arguing that Infogroup was

5

aware that Office Depot was authorized to use the licensed data for the purpose of making real estate decisions. Doc. No. 145 at 8. In particular, Office Depot informed Infogroup and the Court that "Infogroup did not contract with any particular 'division' or internal 'department' of Office Depot; it contracted with Office Depot Inc. for the use of its [database.] The entire company was authorized, and Infogroup knew this." *Id.* Office Depot further reminded Infogroup and informed the Court that internal Infogroup emails also showed Infogroup discussing its "ongoing support" for Office Depot, Mr. Padmanabhan in particular, on "real-estate usage." *Id.* In a follow-on brief, Office Depot raised to Infogroup's attention its own internal emails touting Office Depot's authorized use of the database for not only internal research and analytics, but internal research and analytics for real estate purposes in particular. *See* Doc. No. 157-2 at 5-10 (emails from Infogroup personnel touting Office Depot's use in real estate). As discussed in these briefs, the entire corpus of Infogroup's own internal documents were consistent with Infogroup knowing at all times that Office Depot's use of their database for real estate purposes was licensed.

On **July 19, 2022**, Infogroup informed Office Depot via its counsel that it had "inadvertently deleted" approximately half of the documents Office Depot had produced in this litigation, and asked for the production to be re-served. Ex. J.

The next day, on **July 20, 2022**, Infogroup offered to settle the matter, but still demanded Office Depot pay Infogroup a sum, refusing to recognize that its contract licensed Office Depot to the activities for which it had been accused.

On **August 2, 2022**, Office Depot responded that Infogroup's July 19, 2022 request reflected a "very serious situation" because the missing production had been served over a year earlier on June 22, 2021, and Office Depot could not confirm that Infogroup had ever downloaded the production in the first place. If Office Depot was correct, then it would mean that Infogroup

had prosecuted its case for over a year without attempting to review the discovery produced, yet Infogroup sought a stay of deadlines to pursue its own "specialized discovery," asked the Court to extend discovery three times, asked the Court to defer adjudication of Office Depot's summary judgment motion for want of more discovery, and moved to amend the complaint. Under the threat of sanctions for such wanton conduct, Office Depot offered an alternative to settle under condition that Infogroup dismiss this case with prejudice, publicly apologize for Infogroup's false accusation, and pay Office Depot one-third of its attorney fees to date, or approximately $500,000. *See* Ex. K. (In fact, Office Depot had amassed $1.65 Million in fees by this date.) Infogroup again rejected in less than one hour later, without explanation.

Additional back-and-forth occurred regarding potentially settling the matter. On **August 11, 2022**, Office Depot again reminded Infogroup that it would be the prevailing party in Infogroup's copyright claim, but nonetheless offered to settle under condition that Infogroup dismiss this case with prejudice and pay Office Depot one-quarter of its attorney fees to date. However, later the same day, the Court granted Infogroup's motion to amend its complaint, and all settlement discussion ceased.

Infogroup filed its Amended Complaint on **August 15, 2022**, containing the defective averments that its principal place of business was in Papillion, Nebraska and that "Office Depot, Inc." was not licensed to use its database despite the license saying otherwise on its face.

Litigation continued through **June 20, 2023**, including a successful motion to dismiss or transfer, and then a successful motion to dismiss in the Southern District of Florida after the District of Nebraska effected transfer due to the defect in personal jurisdiction. Its motion to dismiss the copyright claim having been granted, Office Depot became the prevailing party, entitling it to its reasonable attorneys fees and costs.

## LEGAL STANDARD

Under the American Rule, a prevailing litigant is generally not entitled to recover attorneys' fees from the non-prevailing litigant unless a statute or contract provides for it. *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158, 2164 (2015) (emphasis added). When attorneys' fees are authorized by statute, courts may award attorneys' fees consistent with that authorization. The Copyright Act is such a statute. It authorizes an award of attorneys' fees to a prevailing defendant. 17 U.S.C. § 505. "[I]n copyright cases, although attorneys' fees are in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *Prof'l LED Lighting, Ltd.*, 88 F. Supp. 3d at 1376. The United States Supreme Court identified several nonexclusive factors to inform a court's decision to award fees under Section 505: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n.19 (1994). The Supreme Court later explained that, while not outcome determinative, district courts should give "substantial weight" to the reasonableness of the losing party's litigation positions, and ultimately fee awards under Section 505 should further the policies of the Copyright Act. *Kirtsaeng v. Jon Wiley and Sons Inc.*, 579 U.S. 197, 204, 208-10 (2016).

## ARGUMENT

Office Depot is entitled to its reasonable attorneys' fees and costs incurred in this case for its defense against Infogroup's unmeritorious copyright claim. The default assumption under the Copyright Act is that a prevailing party ought to be awarded its full costs and reasonable attorneys' fees. Office Depot is the prevailing party, and Infogroup's copyright claims were objectively

unreasonable and frivolous in light of the license in the MCSA and SOS-10, emphasizing the propriety of awarding Office Depot its fees in this instance.[2]

## I.   Office Depot is Entitled To Attorneys' Fees and Costs under the Copyright Act.

Under The Copyright Act, Office Depot, as the prevailing party, is entitled to its reasonable attorneys' fees. As explained below, the action arises out of the Copyright Act and Office Depot, as the prevailing party in this action, should be awarded attorneys' fees.

### A.   Office Depot is the Prevailing Party.

The Court dismissed Infogroup's copyright claim with prejudice, materially altering the legal relationship between the parties. (June 20, 2023 Order.) Thus, Office Depot is the prevailing party. *See Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 38 F.4th 1372, 1381 (11th Cir. 2022) ("[T]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties") (internal marks omitted); *CRST Van Expedited Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016) ("The defendant has . . . fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.").

Courts in this district have recognized that "[w]here a defendant prevails in a copyright case, there is a strong presumption in favor of awarding fees." *Korman*, 2018 WL 6978693, at *2 (citing *Lil' Joe Wein*, 2008 WL 2688117, at *4). Moreover, as discussed below, each of the

---

[2] In addition, because the dismissal of Infogroup's copyright claim was premised on an interpretation of the MCSA (*see* June 20, 2023 Order at 8, 9), the attorneys' fees provision in the MCSA provides an alternate basis for awarding fees and costs to Office Depot. MCSA ¶ 18 (prevailing party "shall" be entitled to its reasonable attorneys' fees and costs in any litigation between the parties with respect to the MCSA); *Kelly v. Lee County RV Sales Co.*, No. 8:18-cv-424-T-27JSS, 2021 WL 679258, at *3 (M.D. Fla. Feb. 22, 2021) ("Provisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced. Trial courts do not have the discretion to decline to enforce such provisions, even if the challenging party brings a meritorious claim in good faith."); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163-64 (11th Cir. 2017) (finding plaintiff was entitled to fees for copyright claims on top of fees for its breach of contract claims where the copyright claims arose directly out of the same contract).

nonexclusive factors courts rely on when determining whether to award fees under Section 505 of the Copyright Act weigh in favor of an award of fees.

### B.  Infogroup's Copyright Claim was Objectively Unreasonable and Frivolous

Infogroup's copyright claim was both objectively unreasonable and frivolous. Infogroup purposefully avoided mention of the contract in its original Complaint, despite knowing that the contract licensed the conduct on which its Complaint was based. *See* Ex. D (internal communications from 10 months before filing suit showing knowledge). Office Depot asserted the contract defense in its first responsive pleading. (Doc. 15 at 5-6.) In fact, Infogroup admitted that SOS-10 contract granted Officed Depot the license for "internal research and analytics" back in 2020, (Doc. No. 33 at ¶¶ 15-18), and that both the MCSA and SOS-10 explicitly defined the Client as "Office Depot, Inc." rather than any division thereof, (MCSA and SOS-10 recitals), but nonetheless continued litigating this case for roughly three years.

"To determine whether the non-prevailing party's position was objectively unreasonable, courts consider the clarity of the law with respect to the losing party's position at the time that the losing party pressed its argument. To that end, courts consider whether the unsuccessful position was patently without merit or otherwise clearly lacking a legal or factual basis." *Caracol Television, S.A. v. Telemundo Television Studios, LLC*, No. 18-23443-CIV-GAYLES/OTAZO-REYES, 2022 WL 17583608, at *6 (S.D. Fla. Aug. 4, 2022) (citations and internal marks omitted).

As discussed above, Infogroup was aware, before filing suit, that it had granted a license to Office Depot to the copyrighted works. The June 20, 2023 Opinion confirmed that Infogroup's claim was premised on a "position ***contrary to the plain language*** of" the license, and that "the ordinary meaning of the language in the Agreement […] does not restrict Defendant's use of the Licensed Data as Plaintiff suggests." (June 20, 2023 Order at 8, 9 (emphasis added).) Infogroup's

position was "patently without merit or otherwise clearly lacking a legal or factual basis," and therefore at least objectively unreasonable. *See Caracol Television*, 2022 WL 17583608 at *6.

### C.      Infogroup's claim also rises to the level of frivolousness.

"[F]rivolousness . . . in copyright cases is usually found in cases where the claimant does not even own the copyright in question or *has granted a license to the alleged infringer but sues for infringement nonetheless*." *Corwin v. Walt Disney World Co.*, No. 6:02-cv-1377-Orl-19KRS, 2008 WL 754697, at *6 (M.D. Fla. Mar. 18, 2018) (emphasis added). Here, Infogroup sued Office Depot over a licensed use. Accordingly, its copyright infringement claim was frivolous. *See id.*; *see also Lowe v. Loud Records*, No. 01-1797, 2004 WL 527831, *3 (E.D. Pa. Nov. 20, 2023) (copyright claim frivolous where plaintiff had granted defendants a license).

### D.      Infogroup's Motivation was Improper

Infogroup has known that Office Depot was licensed for internal research and analytics since before filing this lawsuit. Courts have found improper motivation weighing in favor of granting fees when a party has a losing case, yet continues to litigate the action. *See, e.g., Lil' Joe Wein*, 2008 WL 2688117, at *4; *Cohen v. Va Elec. & Power Co.*, 617 F. Supp. 619, 623 (E.D. Va. 1985). Infogroup continued to litigate a baseless case for over three years despite being aware of its baselessness; accordingly, its improper motivation weighs in favor of an award of fees.

### E.      A Fee Award will Advance Considerations of Compensation and Deterrence

Finally, awarding fees in this case will advance considerations of compensation and deterrence. "[A] party that successfully prevails over unreasonable or bad faith arguments should be awarded its fees and costs to promote enforcement . . . of the Copyright Act, and conversely, a party that asserts unreasonable or bad faith arguments should be deterred from doing so by paying the fees and costs the prevailing party incurred." *Oravec v. Sunny Isles Luxury Ventures L.C.*, NO. 04-22780-CIV, 2010 WL 1302914, at *8 (S.D. Fla. Mar. 31, 2010). Courts have

11

recognized that "a prevailing defendant's successful defense against a copyright claim aides in establishing the boundaries of infringement and furthers the purpose of 'enriching the general public through access to creative works.'" *Amadasun v. Dreamworks LLC*, 359 F.Supp.2d 1367 (N.D. Ga. 2005) (quoting *Fogerty*, 510 U.S. at 527). "Where a defendant prevails in a copyright case, there is a strong presumption in favor of awarding fees." *Korman*, 2018 WL 6978693 at \*2 (citing *Lil' Joe Wein*, 2008 WL 2688117 at \*4). Office Depot is Entitled to $2,024,180.38 in Reasonable Attorneys' Fees and $40,241.12 in Costs.

## II.   Attorneys' Fees.

The Eleventh Circuit uses the "loadstar approach" standard in calculating awards of attorneys' fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The lodestar approach requires the Court to multiply the reasonable hours expended by defense counsel's hourly rate. *Lil' Joe Wein*, 2008 WL 2688117 at \*8. Next, the Court must determine whether the hourly rates and hours expended are reasonable. *Id.* at \*8-9. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Defendant bears the burden of documenting the appropriate hours and hourly rates, but the "[C]ourt . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)). Next, the district court must deduct time spent on discrete and unsuccessful claims in setting an attorney fee award. *Id.* at 1302. However, this does not require "exclud[ing] the hours [a defendant] incurred on unsuccessful issues in their defense . . . ." *Oravec*, 2009 WL 6337121, at \*19. After determining the lodestar, "the court must next consider the necessity of an adjustment for results obtained." *Id.*

12

### A.     Office Depot's Expenditure of 3148.6 Hours was Reasonable.

The party seeking attorneys' fees must demonstrate that the amount of hours sought to be compensated were "reasonably expended on the litigation." *Blum v. Stenson*, 465 U.S. 886, 888 and 897. The applicant for attorneys' fees must use "billing judgment" and exclude unnecessary hours, "irrespective of the skill, reputation or experience of counsel". *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) ("*Barnes*"). If the fee applicant satisfies the burden of showing that the time spent reflects the distinct contribution of each lawyer, and the customary practice of multiple-lawyer litigation, the applicant is entitled to recover for the hours expended by multiple attorneys. *Id.* at 432.

While the fee applicant bears the initial burden of submitting evidence sufficient to allow the Court to confirm the requested fees are not excessive, "objections and proof from fee opponents' concerning hours that should be excluded must be specific and reasonably precise." *Barnes*, 168 F.3d at 428. In determining reasonable hours expended, courts consider "whether all the work performed by . . . counsel was necessary and was performed efficiently." *CBS Broad., Inc. v. Browning*, No. 06-22463-CIV, 2007 WL 2850527, at *8 (S.D. Fla. Sept. 21, 2007).

Office Depot's counsel expended 3237.8 hours in the course of this case, which was a reasonable and appropriate amount of time investigating, building and litigating this case, which spanned 38 months. Early in the case, Infogroup asserted that damages were well into the "tens of millions of dollars" and pointed to its $53.6M copyright verdict in Nebraska in 2018 for infringement of its business database, requiring Office Depot to mount a vigorous defense. *See* Ex. L. This case was labor intensive, given the complexity of the facts and the legal issues involved. For example, this case required handling procedural complexities due to Infogroup's filing and litigating the case in the wrong jurisdiction, Infogroup's multiple attempts to perform asymmetric

13

discovery, Infogroup's forcing Office Depot to litigate issues such as whether the clearly marked jury waiver in the contract was effectual, and shifting the burden to prove subject matter jurisdiction to the defendant. The complexity and scope of this litigation required skilled counsel and devotion of substantial time and effort to address these issues while also moving the case forward through fact and expert discovery. *See* Declaration of Damon M. Lewis ("Lewis Decl."), Ex. 1, ¶¶ 4-8. In similar cases, courts have found the majority of the hours actually expended were reasonable. *See e.g.*, *Lil' Joe Wein*, 2008 WL 2688117 at *11-12 (finding "great majority of hours billed by Defendants' counsel are reasonable" where, as here, plaintiff's unreasonable actions increased defendant's costs in defending the case and defendants provided voluminous billing records).

In addition, due to stringent billing practices and controls, Office Depot's counsel conservatively wrote off over 155 hours from its invoices to Office Depot in the past year alone. *See* Lewis Decl. ¶¶ 45, 50. These preemptive and proactive measures further affirm the reasonableness of the fee hours sought by Office Depot. *See CCUR Aviation Fin. LLC v. S. Aviation Inc.*, No. 21-cv-60462-BLOOM/Valle, 2022 WL 10042962, at *6 (S.D. Fla. Oct. 14, 2022) (finding fee applicants applied proper billing judgment where a review of billing documentations indicated they did not perform excessive, duplicative, and unnecessary work).

      **B.**     **Office Depot's Rates are Reasonable.**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum*, 465 U.S. at 895-96 n.11). Courts in the Eleventh Circuit generally award compensation at current rates rather than at historic rates. *Norman*, 836 F.3d at 1302. "The general rule is that the relevant market for purposes of determining the reasonable hourly rate is

'the place where the case is filed." *Barnes*, 168 F.3d at 437 (internal quotations omitted). In establishing the reasonable hourly rate, the court may consider case-specific factors such as "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1205, n.3 (N.D. Fla. 2019). These cases collectively cite what is known as the *Johnson* factors, articulated in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), in evaluating comparability of market rates. *E.g. Norman*, 836 F.2d at 1299-1300.

"If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims. . . ." *Barnes*, 168 F.3d at 437-38. Non-local rates are justified where a party demonstrates there are no attorneys practicing in the local market that are willing and able to handle the party's claims. *Id.*; *see also Brooks v. Georgia. State Bd. of Elections*, 997 F.2d 857, 869 (11th Cir. 1993) (upholding determination that there were no local attorneys familiar with voting rights actions who could have handled case); *Spurlock v. Complete Cash Holdings, LLC*, 540 F.Supp.3d 1201, 1211 (N.D. Ga. May 14, 2021) (finding non-local rates justifiable where plaintiffs could not likely have found lawyers "sufficiently experienced to handle the complexities of this case presented in a successful and thorough manner").

Examples of specific evidence Florida courts have accepted to establish the community rate include affidavits of local lawyers who are familiar with the fee applicants and the rates for similar work and survey data. *See, e.g., Cuban Museum of Arts and Culture Inc. v. City of Miami*, 771 F. Supp. 1190, 1191-92 (S.D. Fla. 1991) (accepting affidavits "confirm[ing] that the rates claimed [were] in accordance with the prevailing market rates charged in similar cases by attorneys with comparable skills, reputations, and experience."); *Env't Mfg. Sols., LLC v. Peach State Labs, Inc.*, 274 F. Supp. 3d 1298, 1322 (M.D. Fla. 2017) (accepting AIPLA survey data providing averages of hourly rates for intellectual property attorneys and categorizing them based on years of experience, highest non-law degree, geographic location, and other criteria). In intellectual property cases, which "require[e] counsel skilled in this branch of the law," who "routinely charge more than most trial lawyers," a "substantial hourly rate is merited." *Lorillard Tobacco Co. v. Ca. Imports, LLC*, No. 3:10CV817-JAG, 2012 WL 5423830, at *3 (E.D. Va. Nov. 6, 2012).[3]

Here, because the case was initially filed in Nebraska, the community is Omaha, Nebraska. *See Barnes*, 168 F.3d at 437. However, Office Depot is entitled to non-local rates because there were no qualified Omaha, Nebraska attorneys available that could have represented Office Depot. *See Spurlock*, 540 F.Supp.3d at 1211. The intellectual property bar, and particularly the copyright bar, in Nebraska is small. Declaration of Marnie A. Jensen ("Jensen Decl."), Ex. 2, ¶ 7; Lewis Decl. at ¶ 3 (only 54 copyright cases filed within the past 10 years). Counsel for Office Depot was only able to locate five firms with copyright experience: Husch Blackwell, Koley Jessen, Kutak

---

[3] In this analysis, courts rely primarily on the following *Johnson* factors: the first (time and labor expended), the third (skill required to perform legal services), the fourth (attorneys' opportunity cost), the fifth (customary fee), the sixth (attorney expectations at the onset of the litigation), the ninth (the experience, reputation, and ability of the attorneys), and the twelfth (recent fee awards in comparable cases). *Page v. Va. State Board of Elections*, No. 3:13-cv-678, 2015 WL 11256614, at *3, fn. 4 (E.D. Va. Mar. 10, 2015).

Rock, Baird Holm, and Fraser Stryker. Lewis Decl. ¶ 41. Of those firms, Office Depot could not have retained Kutak Rock, Baird Holm, or Koley Jessen for this matter as they have all recently represented Infogroup. *Id.* And notably, Fraser Stryker represented a defendant that lost a significant copyright case to Infogroup (*Infogroup, Inc. v. DatabaseUSA.com LLC*). *Id.*

That leaves Husch Blackwell, a firm that Office Depot engaged as Nebraska counsel that often collaborates with out-of-state intellectual property litigators on large intellectual property matters in Nebraska. Lewis Decl. ¶ 41; Jensen Decl. ¶ 1, 8. Given the small intellectual property bar, it is not uncommon for Nebraska firms to do so. *Id.* Tellingly, in the case against DatabaseUSA, Infogroup itself retained attorneys from Houston, Raleigh, and Los Angeles in addition to Nebraska counsel, and moved for *and received* its attorneys' fees for out-of-state attorneys where it was eligible by law. *See Infogroup, Inc. v. DatabaseUSA.com LLC*, No. 8:14-CV-49, 2018 WL 6624217, at *24 (D. Neb. Dec. 18, 2018) ("The Court has carefully considered the hours spent on the case by Infogroup's attorneys, and their hourly rates. … [T]he Court finds Infogroup's requested amount to be fair and reasonable…."); *see also* Ex. B (Infogroup's motion requesting fees including for out-of-state firms), Ex. C. (DatabaseUSA's unsuccessful response motion arguing the rates by out-of-state firms exceeded prevailing rates).

Further, the rates Office Depot paid are consistent with rates charged by attorneys with comparable skills, reputations, and experience in Omaha, Nebraska *and rates paid* for complex copyright litigations in Omaha, Nebraska. *See* Lewis Decl. ¶¶ 3, 39-46; Jensen Decl. ¶ 6. The vast majority of hours expended on behalf of Office Depot during this litigation were by Damon Lewis (partner at Hogan Lovells with over 17 years of experience specializing in IP litigation, with a case-long average rate of $869.67/hr), Lauren B. Cury (counsel at Hogan Lovells with over 9 years of experience specializing in IP litigation, with an average rate of $799.40/hr), and Perry Wu

17

(attorney at DLA Piper with over 25 years of experience specializing in IP litigation, with an average rate of $238.65). Marnie Jensen (partner at Husch Blackwell with 22 years of experience) served as Nebraska counsel for Office Depot, and charged her negotiated "local counsel" rate, a 37.6% discount from her lead counsel rate. Jensen Decl. ¶ 6; *see also Sanders v. Union Pac. R.R. Co.*, 4:20CV3023, 2022 WL 3445798, at *3 (D. Neb. Aug. 17, 2022) ("An attorney's prevailing rate in the community is strongly presumptive of the correct rate that should be awarded").

These rates are consistent with American Intellectual Property Law Association Report of the Economic Survey 2021 ("AIPLA Survey"). *See Env't Mfg.*, 274 F. Supp. 3d at 1322 (relying on AIPLA Survey for rates for attorneys specializing in intellectual property). In particular, the AIPLA Survey shows that in 2020, the average billing rate for a full-time intellectual property lawyer at a firm with more than 150 attorneys was $640/hr, with a rate of $810/hr in the Third Quartile. Ex. F at I-49; *see also* Lewis Decl. ¶ 42. As set forth in the supporting Declarations, all of the Office Depot attorney rates are consistent with rates in the AIPLA Survey. *Id.* at ¶¶ 42-44.

As further set forth in the supporting Declarations, the hourly rates Office Depot seeks for the work performed by its legal team are reasonable and consistent with market rates for like-skilled firms, taking into account the technical nature of the subject matter and the procedural complexity of the case. Damon Lewis served as lead counsel and explains the rates being sought (1st *Johnson* factor), the skill required to perform the legal services required by the case (3rd *Johnson* factor), those historically paid by Office Depot over the course of Mr. Lewis' 6-year relationship with Office Depot (the 5th and 6th *Johnson* factors), and the experience and reputation of the attorneys (9th *Johnson* factor). *See* Lewis Decl. ¶ 12. Second, per the AIPLA's 2021 economic survey, defending a $25M+ copyright case is expected to require $3 Million in fees through discovery and motions practice (*See* Lewis Decl. at ¶ 39, 12th *Johnson* factor) and that the

rates charged by Office Depot's counsel are consistent with those charged by lawyers of similar experience at peer firms in the Omaha market (the 5th *Johnson* factor). *See* Lewis Decl. ¶¶ 41-43.

Additionally, respecting the twelfth and fifth *Johnson* factors, as discussed above, Infogroup itself set the example in Nebraska copyright and trademark litigation, moving for and receiving its attorneys' fees allowed by statute for Houston, Raleigh, and Los Angeles attorneys that worked on the matter alongside Nebraska attorneys. *See Infogroup, Inc. v. DatabaseUSA.com LLC*, 2018 WL 6624217 at *24; *see also* Ex. B (requesting fees including for out-of-state firms Gordon & Rees and Liner), Ex. C. (DatabaseUSA's opposition arguing rates by out-of-state firms, including Liner, exceeded the prevailing rates). As a result, the total fees are consistent with those awarded in similar cases. *E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs*, 724 F.3d 561, 572 (4th Cir. 2013) ("such fee awards do provide 'inferential evidence' of the prevailing market rate."). For example, in the matter of *BMG Rights Management v. Cox Communications*, the plaintiff was awarded approximately $8.3 million in attorneys' fees for prevailing in a copyright case that had a similar time span of litigation. 234 F. Supp. 3d 760 (E.D. Va. 2017).

Finally, these rates reflect a material discount provided to Office Depot. *See* Lewis Decl. ¶¶ 36, 47-50. And, where the non-prevailing party is "largely responsible for the amount of [] attorneys' fees," "it is only fair that [it] bear the cost of [its] actions by paying those fees." *Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 881 F. Supp. 1021, 1025 (E.D. Va. 1994). That was the case here, where Infogroup forced this suit and refused to yield despite overwhelming evidence that the activities complained of were licensed.

**C.    Office Depot Experienced a Complete Success in this Litigation.**

In addition , the most important factor is the degree of success of the prevailing party. *See Norman*, 836 F.2d at 1302 ("If the result was excellent, then the court should compensate for all

hours reasonably expended."); *Hensley*, 461 U.S. at 435-36 ("Again, the most critical factor is the degree of success obtained."). As set forth in above sections I.A and II.B, Office Depot was the prevailing party, and thus should recoup its full compensatory fee.

> **D.     Office Depot is Entitled to its Costs Incurred in the Course of this Litigation.**

Office Depot is also entitled to its costs incurred in the course of this litigation under the MCSA, which total $40,241.12. *See* Lewis Decl. ¶ 37.

**CONCLUSION**

For the foregoing reasons, the Court should grant Office Depot's Motion.

**CERTIFICATE OF GOOD FAITH CONFERRAL**

Pursuant to Local Rule 7.1(a)(3) and 7.3(a)(8), on August 10, 2023, counsel for Office Depot conferred with counsel for Infogroup in good faith regarding the relief requested in this motion. However, no agreement was reached regarding either entitlement to fees or amount. Infogroup's counsel confirmed they had opportunity to review Office Depot's invoices, but did not identify any particular time entries or costs to which Infogroup objects.

Dated this 21st Day of August, 2023        Respectfully submitted,

By:*/s/ Mark R. Cheskin*
Mark R. Cheskin, Esq.
Fla. Bar No. 708402
Hogan Lovells US LLP
600 Brickell Avenue, Suite 2700
Miami, Florida 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
mark.cheskin@hoganlovells.com

20

Damon M. Lewis (*pro hac vice*)
Celine Jimenez Crowson (*pro hac vice)*
Anna Kurian Shaw (*pro hac vice)*
Lauren B. Cury (*pro hac vice)*
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: 202-637-5600
Facsimile: 202-637-5910
damon.lewis@hoganlovells.com
celine.crowson@hoganlovells.com
anna.shaw@hoganlovells.com
lauren.cury@hoganlovells.com

*Attorneys for Office Depot, Inc.*

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Verified Motion for Attorneys' Fees and Costs and Incorporated Memorandum of Law, that I have personal knowledge of the matters set forth therein, and that the facts stated therein are correct and true.

Dated this 21st Day of August, 2023          Respectfully submitted,

Damon M. Lewis

22

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 21, 2023, I electronically filed the foregoing

document with the Clerk of the Court via CM/ECF.   I also certify that the foregoing document is

being served this day on all counsel of record via transmission of Notices of Electronic Filing

generated by CM/ECF.

By:_____*s/Mark R. Cheskin*_____
                Mark R. Cheskin