# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| _____ ) | |
| INFOGROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 9:23-cv-80358-AMC |
| ) | |
| OFFICE DEPOT, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**DECLARATION OF DAMON M. LEWIS**
**IN SUPPORT OF OFFICE DEPOT'S MOTION FOR FEES AND COSTS**

I, Damon M. Lewis, declare and state as follows:

1.     I am an attorney licensed to practice in Virginia and Washington, DC and admitted pro hac vice to practice before this Court. I am a partner at the law firm of Hogan Lovells US LLP ("Hogan Lovells"), and lead counsel for Defendant Office Depot, Inc. ("Office Depot") in this matter. I submit this declaration of my own personal knowledge. If called to testify to the matters herein, I could and would competently do so.

2.     Attached as **Exhibit A** is a true and accurate set of charts prepared by individuals working under my direction upon a review of timekeeper entries billed by Hogan Lovells to Office Depot in this case. Included in the charts are the total hours and amounts billed by the 16 individuals identified below (Section I *infra*) in the period relevant to Office Depot's request for fees and costs—namely, from March 24, 2020 (the date Infogroup commenced this suit by filing its Complaint in the District of Nebraska) through June 20, 2023 (the date of the Court's dismissal Order). Office Depot has paid all billed amounts summarized in each chart. In addition

1

to hours and amounts billed for this matter during the relevant period, the charts also identify the hourly rates charged to Office Depot for each relevant timekeeper; and the standard hourly rates and total amounts that would normally be charged for each timekeeper for the same work in a non-Office Depot matter.

3.      Few copyright cases are brought in the District to Nebraska. For instance, DocketNavigator and other PACER-based query services indicate that only 54 copyright cases have been brought in the District of Nebraska in the past 10 years. By contrast, the Southern District of Florida has seen around 1800 in the same span of time. Indeed, the last major copyright case brought in the District of Nebraska was *Infogroup v. DatabaseUSA.com*, in which Infogroup, the same plaintiff asserting a similar database as in the instant case, composed its team with lawyers from Houston, Raleigh, and Los Angeles, at Gordon & Rees and Liner, in addition to those in Nebraska. While Infogroup did not receive its fees for the copyright claim due to statutory ineligibility, it received over $400,000 in reasonable attorney fees on its other claims, including those from the Houston, Raleigh, and Los Angeles lawyers. *See Infogroup, Inc. v. DatabaseUSA.com LLC*, No. 8:14-CV-49, 2018 WL 6624217, at *24 (D. Neb. Dec. 18, 2018) ("The Court has carefully considered the hours spent on the case by Infogroup's attorneys, and their hourly rates. … [T]he Court finds Infogroup's requested amount to be fair and reasonable…."); *see also* **Exhibit B** (a true and accurate copy of Infogroup's Corrected Motion for Award of Attorney Fees to Plaintiff Infogroup, Inc. And Against DatabaseUSA.com LLC, Case No. 8:14-CV-00049, Dkt. 495 (D. Neb.) indicating that the requested fees included those from Gordon & Rees and Liner); **Exhibit C** (excerpts of a true and accurate copy of DatabaseUSA's Brief in Opposition to #495 Plaintiff's Motion for Attorneys' Fees, Case No. 8:14-CV-00049, Dkt. 516 (D. Neb.) arguing unsuccessfully for a downward departure on the

Liner fees). This Declaration is offered to explain why the rates billed to Office Depot were reasonable and justified for this matter.

## I.      OVERVIEW OF THE SUIT

4.      On March 24, 2020, Infogroup, Inc. ("Infogroup") filed suit in the District of Nebraska against Office Depot claiming copyright misappropriation under the Copyright Act. Infogroup asserted that Office Depot had "obtained" copies of Infogroup's Business Database and used it in an alleged "mapping program" without Infogroup's knowledge, consent, or authorization. Infogroup's complaint included just one count – copyright infringement. While Office Depot had "obtained" the database by way of the contract it entered with Infogroup wherein Infogroup transmitted the database to Office Depot and licensed it for "internal research and analytics," Infogroup did not mention the contract's existence in its initial Complaint, nor bring a claim for breach.

5.      On June 8, 2020, Office Depot moved to dismiss, arguing that "Plaintiff granted Office Depot an *express* license to use the database pursuant a series of written contracts known collectively as the Master Client Services Agreement ("MCSA")…," Doc. No. 15 at 2, and that the contract allowed Office Depot to use the data for "internal research and analytics." *Id*. at 6. The motion further argued that dismissal was appropriate for want of both personal jurisdiction under new Nebraska precedent and subject matter jurisdiction, and that in failing to articulate a violation of any of the six rights granted by the Copyright Act, Infogroup had failed to state a claim. The District of Nebraska denied Office Depot's motion, and discovery opened in Winter 2021. In Office Depot's first discovery responses, it explained in full what it had done with Infogroup's data and how that activity was fully licensed under the MCSA and associated contracts.

6.     This case was hotly contested and heavily litigated and briefed—in large part because of delays caused by Infogroup. First, Infogroup filed in the wrong district, requiring Office Depot's motions to transfer. Then, because Infogroup had requested a jury trial despite the clear jury waiver in the MCSA, Office Depot was required to file a motion to strike two months into discovery. Next, Infogroup failed to provide discovery of any significance for five months until late June 2021, despite the original progression order requiring written discovery to conclude in August 2021. When it finally did produce documents, it included a 2019 internal memo detailing Office Depot's right to use the database for "internal research and analytics," the use undergirding the Court's dismissal order. *See* **Exhibit D** (a true and accurate copy of a document produced in the above-captioned matter with based label INFOGROUP000398). Instead of withdrawing its Complaint, Infogroup sought and received a stay of deadlines so that it could take the deposition of Office Depot's main witness, Mukund Padmanabhan, out of cycle. Infogroup would later admit that "based on Mr. Padmanabhan's testimony …, Office Depot used Infogroup's Business Database in third party software in order to conduct its real estate research and analytics." Doc. No. 135 at 2. Once the stay was lifted and the case was re-progressed (Doc. No. 100), Infogroup petitioned the Court to require mediation, a mediation which Infogroup's lead counsel Greg Scaglione failed to attend. Per the Court's order, Office Depot filed a motion for summary judgment on April 1, 2022 addressing every copyright allegation Infogroup had levied during the case. Infogroup's response was due April 22, 2022. Even though the re-progressed schedule ended written discovery the day before, Infogroup refused to respond to the summary judgment motion, and instead asked the court to defer while it sought new discovery. On the same day, Infogroup moved to amend its complaint to add a claim for breach of contract, threatening the need to start litigation over from scratch. This amended complaint necessitated

Office Depot's renewed motion to dismiss as it claimed, contrary to the plain wording of the contract, that Office Depot was not licensed to use the database for the internal research and analytics purposes it did. With its motion to amend pending, Infogroup unilaterally moved to extend the deadline to conduct depositions in case the addition of its contract claim was granted, instead of allowing Office Depot to depose its witnesses on the copyright claim already in the case, and which copyright claim subsumed the contractual issues sought to be added. This is why only one deposition had been taken by the time Office Depot filed its 2022 motion to dismiss.

7.    The "Game of Telephone." Infogroup's motion to amend its complaint also contained the admission that Infogroup's prior accusations, on which over 2 years of litigation were based, stemmed from its own misunderstanding – a self-described "game of telephone" wherein Infogroup's understanding was different from that which Office Depot had conveyed "through no fault of the receiver." Doc. No. 155 at 1 (Infogroup's Reply Br. ISO its Motion to Amend). Yet that "game of telephone" was entirely among Infogroup's employees, as shown by the documents in the case, and the responsibility for bringing this suit without having conducted an appropriate pre-complaint investigation falls on Infogroup, alone.

8.    Infogroup's failure to conduct a pre-suit investigation forced Office Depot to waste time and resources litigating a case that should never have been brought. But worse, Infogroup's dogged insistence to press forward when the merits of Office Depot's defense were clear forced incredible complexity out of what should have been a very simple case. The sheer volume of work necessitated by Infogroup's litigation strategy required the size, skill, and experience of Office Depot's litigation team.

## II.      BIOGRAPHIES AND ROLES OF THE OFFICE DEPOT OUTSIDE COUNSEL TEAM

9.      The following section describes the timekeepers who played a substantial ongoing role in this matter.

10.      **Damon Marcus Lewis:** I am a partner in Hogan Lovells' intellectual property practice group. I am a 2006 graduate of the University of Michigan Law School and have practiced law for 17 years. I joined Hogan Lovells in 2022. Before that, I was Of Counsel at DLA Piper LLP (US) from 2017 to 2022. I was also a clerk at the United States Court of Appeals for the Federal Circuit for just over two years between 2007 and 2009. Before law school, I received a bachelors and a masters degree from the Massachusetts Institute of Technology in Computer Science Engineering and Computer Science and Electrical Engineering respectively. I then worked for three years as an Applications Engineer at Oracle Corporation, where I gained significant skill in programming, understanding, and using databases. My legal practice focuses on litigation of technology and intellectual property matters, including patent and copyright disputes. I have been named to the National Black Lawyers Top 100 and was named a Federal Circuit Bar Association Global Fellow in 2015.

11.      As Office Depot's lead counsel on this matter, and the client relationship lawyer at my prior firm, I was involved with the case since the outset, with primary responsibility for the overall strategy, case management, and client relations. I regularly conferred with and advised Office Depot throughout the case. I was heavily involved with all aspects of motion practice, including procedural, discovery, and dispositive motions. I argued at numerous hearings, including the July 14, 2021 hearing on Infogroup's request for specialized discovery and the May 11, 2023 hearing on Office Depot's successful Motion to Dismiss. I also assisted in preparing, and defending the key Office Depot witness for deposition, Mukund Padmanabhan.

As lead counsel, I played a key role in formulating case strategy and leading the team on preparation towards trial, including working as the principal drafter on the motion for summary judgment. I also participated in the mediation session in furtherance of settlement negotiations before Mark Stein on April 4, 2022. I have also overseen preparation of all motions, including this Motion.

12.     This case is one of the many matters I have litigated on Office Depot's behalf. Over the past six years, I have served as Office Depot's lead counsel in many of Office Depot's intellectual property disputes and assisted Office Depot in intellectual property counseling. I have litigated cases on behalf of the company in federal courts throughout the United States. At present, I lead Hogan Lovells' representation of Office Depot in several ongoing patent matters in addition to this matter.

13.     **Nicholas G. Papastavros**: Mr. Papastavros is a partner in DLA Piper's intellectual property litigation group. He is the chair of DLA Piper's Boston Intellectual Property and Technology Practice. Mr. Papastavros is a 1993 graduate of the Columbia Law School and has been practicing law for 30 years. His practice focuses on intellectual property litigation for clients in diverse industries, including technology, software, communications, and licensing. He is an experienced litigator of patent and copyright disputes. Mr. Papastavros has been repeatedly recognized in The Legal 500 and was named a Massachusetts Rising Star by Law & Politics Media, Inc.

14.     Mr. Papastavros's responsibilities began with the Court's November 2020 order denying Office Depot's motion to dismiss, and included assisting with the development of Office Depot's overall strategy. Mr. Papastavros assisted in preparing Mukund Padmanabhan for his deposition and assisted in developing strategies to take depositions of Infogroup's former

employees. Working with me, Kerry Anne O'Neill, Perry Wu, and our team, he played a key role in developing our case strategy.

15.     **G. Perry Wu:** Mr. Wu is an attorney in DLA Piper's intellectual property litigation group. He is a 1992 graduate of Columbia Law School and has been practicing law for 31 years. Mr. Wu was a Junior Partner at Hale and Dorr for five years between 1997 and 2002 before moving in-house to Staples, Inc.. At Staples, Mr. Wu rose to the title of Senior Company Counsel, reporting directly to the Chief Legal Officer, and oversaw global litigation focusing on intellectual property, and other commercial litigation matters. He joined DLA Piper as an attorney in 2019.

16.     Mr. Wu joined the matter after the first motion to dismiss was denied in late 2020, and played a principal role factual analysis. He was instrumental in preparing Mukund Padmanabhan for deposition and preparing myself for hearings.

17.     **Kerry Anne O'Neill**: Ms. O'Neill was an associate in DLA Piper's intellectual property group. Ms. O'Neill is a 2011 graduate of the University of Baltimore School of Law, and practiced law for 11 years. Her practice at DLA Piper focused on copyright, trademark, and trade secret litigation.

18.     Ms. O'Neill worked on this case from near the inception of discovery in February 2021. Her contributions to this matter included developing preliminary copyright strategy and handling and producing discovery requests.

19.     **Marnie Jensen**: Ms. Jensen is a partner of Husch Blackwell's Omaha, Nebraska office, and was its managing partner between April 1, 2019 and January 1, 2023. She is a 2001 graduate of the William & Mary School of Law, and has practiced law for 22 years. She has been rated by Chambers USA in General Commercial Litigation and named a Midwest Trailblazer by

The American Lawyer. She has also been recognized as a Local Litigation Star by Benchmark Litigation. Ms. Jensen has worked on this case since its inception. Her contributions included advising the team on practice and customs in the District of Nebraska.

20.     **Lauren Cury**: Ms. Cury was a Senior Associate in Hogan Lovells' intellectual property group before her elevation to Counsel in 2022. She is a 2014 graduate of Harvard Law School and was named a Rising Star in the field of intellectual property from 2020-2023 by Washington, D.C. Super Lawyers. Ms. Cury's practice focuses on intellectual property litigation for clients in a variety of industries, including technology and retail. Her litigation experience encompasses complex intellectual property matters including trade secret, copyright, and trademark disputes. Ms. Cury has worked on this case since April 2022, when I moved from DLA Piper to Hogan Lovells. Her contributions to this matter included preparing for depositions; various discovery and merits briefing, including the opposition to Infogroup's motion to amend the complaint and the 2022 motions to dismiss; hearing preparation; and general team coordination.

21.     **Anna Kurian Shaw**: Ms. Shaw is a Partner in Hogan Lovells' intellectual property group. A first chair trial litigator, she is a 1999 graduate of Georgetown University Law Center and has been recognized as Ranked and a Global Leader by World Trademark Review, a Trademark Star by IP Stars, a WIPR Leader by World Intellectual Property Review, and recognized by the Legal Media Group's Expert Guides. Ms. Shaw's practice focuses on litigating copyright, trademark, trade secret, and related commercial disputes. She has worked on this case intermittently since June 2022. Her contributions included advising on motion and discovery strategy and general team coordination.

22.     **Peter Nelson:** Mr. Nelson was a Law Clerk and is now an Associate in DLA Piper's intellectual property group. He earned his J.D. from American University Washington College of Law in 2021. Mr. Nelson's practice focuses on intellectual property litigation for clients in the technology, automotive, and health care industries. Mr. Nelson has worked on this matter as needed since December 2020. His primary responsibilities included conducting legal research and assisting with the Motion to Strike the Jury Demand.

23.     **Eric Wang:** Mr. Wang was an Associate in Hogan Lovells' litigation group. He is a 2020 graduate of New York University School of Law, and his practice focused on intellectual property and complex commercial litigation. Mr. Wang worked on this case from April 2022 until he left the firm for a judicial clerkship. His contributions to this case included legal research; drafting motions and related briefing including the opposition to Infogroup's motion to defer or deny Office Depot's motion for summary judgment.

24.     **Ashley Joyce:** Ms. Joyce was an Associate in DLA Piper's Intellectual Property Litigation group. She is a 2008 graduate of the Washington University in St. Louis School of Law, and her practice focuses on copyright and other intellectual property litigation. Ms. Joyce worked on this case from its inception until August 2020, when she became the Senior Vice President of Legal and Business Affairs at the National Music Publishers' Association. Her contributions included legal research and assisting with dispositive motion briefing on copyright and constitutional law issues.

25.     **Katherine Wellington:** Ms. Wellington was a Senior Associate in Hogan Lovells' appellate practice group before her elevation to Partner in 2023. She is a 2013 graduate of Harvard Law School and a former law clerk to Judge Brett Kavanaugh of the United States Court of Appeals for the District of Columbia Circuit and Chief Justice John G. Roberts of the

United States Supreme Court. Ms. Wellington's practice focuses on dispositive- and emergency-motions practice at both the trial and appellate level, in subject matters ranging from trade secrets to voting rights. Ms. Wellington has worked on this case when needed since August 2022. Her contributions included briefing on the issue of case justiciability and related research, and mooting myself for the hearing on the motion to dismiss.

26.    **Naomi Abraham:** Ms. Abraham was an Associate in DLA Piper's intellectual property group. She is a 2016 graduate of the American University College of Law, and her practice focuses on trademark, copyright, and media. Ms. Abraham worked on this case at its inception. Her contributions included legal research and factual analysis.

27.    **Ryan Compton:** Mr. Compton was an Of Counsel in DLA Piper's intellectual property group. He is a 2003 graduate of the Emory University School of Law. While at DLA Piper, Mr. Compton's practice focused on copyright licensing and litigation issues. Mr. Compton worked on this case intermittently from its inception through April 2022 when I moved firms. His contributions included assistance with understanding licensing and copyright valuation.

28.    **Kamron Hassan:** Mr. Hassan was an Associate in Husch Blackwell's Omaha office before being promoted to Partner in 2023. He is a 2014 graduate of Creighton Law School (summa cum laude) and has been recognized as a Great Plains Super Lawyers, Rising Star. He participated in this matter since its inception and provided advice on Nebraska practice.

29.    **Hadley Dreibelbis:** Ms. Dreibelbis is an Associate in Hogan Lovells' Intellectual Property, Media and Technology group. She is a 2021 graduate of Duke University School of Law, and her practice focuses on copyright and trademark litigation. Ms. Dreibelbis worked on this case intermittently from October 2022. Her contributions to this case included legal research; particularly with respect to Office Depot's 2022 motion to dismiss.

30.     **Audrey Murphy:** Ms. Murphy is a Paralegal in Husch Blackwell's Omaha office. She joined Husch Blackwell in 2017 and has provided litigation support for matters pending in federal and state courts. She has worked on this case since its inception, and her contributions included citation- and fact-checking of all Nebraska filings and assembly of supporting materials for briefing and related hearings.

## III.     TOTAL FEES REQUESTED BY OFFICE DEPOT

31.     In total, Office Depot seeks recovery of $2,024,180.38 to compensate for legal fees paid in this matter.

32.     The above sum constitutes only a portion of the actual attorneys' fees paid by Office Depot for the litigation of this case. As set out in detail in **Exhibit A**, the sum of Hogan Lovells, DLA Piper, and Husch Blackwell fees sought by Office Depot encompasses only those fees that were paid for work completed by 16 key timekeepers in the period from March 24, 2020 through March June 20, 2023.

33.     Office Depot does not seek to recover and has excluded from its fee recovery request: a. Fees paid for the work of timekeepers that billed less than 15 hours in total on this matter; and b. Fees incurred after the Court's June 20, 2023 dismissal Order.

34.     The specific fees excluded by this cutoff include those incurred in the litigation of Office Depot's request for recovery of its fees and costs.

35.     The fees sought by Office Depot are summarized in the chart below and break down according to eight phases of work on this litigation:

| Time Period | Primary Work Completed | Hours Billed | Amount Billed |
|---|---|---|---|
| 3/24/2020 – 8/3/2020 | Initial Case Assessment; Preparing and filing Motion to Dismiss the Complaint | 223.5 | $169,676.42 |
| 11/13/2020 – 1/8/2021 | Review Order; first attempt at settlement; draft and file Answer and Counterclaims | 114.0 | $77,255.01 |

12

| 1/9/2021 – 10/29/2021 | Discovery opens; offensive and defensive written discovery; motions practice regarding same; motion to strike Infogroup's jury demand; opposition to Infogroup's requests for specialized discovery and to stay deadlines | 1080.20 | $584,330.65 |
|---|---|---|---|
| 10/30/2021 – 1/21/2022 | 30(b)(6) Deposition - preparation and defense | 268.0 | $165,081.61 |
| 1/22/2022 – 4/4/2022 | Case re-progression; opposition to plaintiff's unsuccessful sanctions motion; motion for summary judgment; mediation; second settlement attempt | 370.9 | $218,367.96 |
| 4/5/2022 – 8/11/2022 | Opposing Infogroup's motions to defer or deny Office Depot's motion for summary judgment and motion to amend the complaint; third settlement attempt | 603.9 | $382,578.79 |
| 8/12/2022 – 10/19/2022 | Draft and file Motion to Dismiss Amended Complaint; Opposition to Infogroup's motion to compel second deposition of Mukund Padmanabhan and Office Depot's in-house counsel | 387.9 | $327,983.09 |
| 1/26/2023 – 6/20/2023 | Re-progress case in S.D. Florida; prepare truncated Motion to Dismiss Amended Complaint; Motion to Dismiss hearing in Ft. Pierce Federal Courthouse; prepare for results | 100.2 | $98,906.85 |
| **Total** | | **3148.60** | **$2,024,180.38** |

36.     As described in more detail below, the sums identified in the chart above reflect substantial rate discounts and timecard write-offs.

## IV.     COSTS AND DISBURSEMENTS REQUESTED BY OFFICE DEPOT

37.     In addition to attorneys' fees, Office Depot also seeks recovery of the following costs and disbursements incurred in the litigation of this matter:

| Type of Cost | Total Amount Incurred |
|---|---|
| Retrieving Copyright Office Documents | $2,434.00 |

| | |
|---|---:|
| Expert Witness fees | $28,069.50 |
| Retrieving Other Government Records | $387.00 |
| Hearing Transcripts and Deposition-Related Costs | $3,595.85 |
| Mediation | $3,750.00 |
| Flights | $1,477.20 |
| Hotels | $444.66 |
| Parking | $66.00 |
| Taxis | $16.91 |
| **Grand Total** | **$40,241.12** |

38.     A true and accurate chart containing a detailed break-down of the above costs is attached as **Exhibit E**.

## V.      COUNSELS' FEES ARE REASONABLE

### A.      The Total Fees Paid for Litigating this Matter Fall Well Within Industry Standards.

39.     Every other year, the American Intellectual Property Law Association (the "AIPLA") produces an Economic Survey that reports on, among other things, the spectrum of fees and costs associated with litigating intellectual property matters. I have reviewed the 2021 edition of the AIPLA Economic Survey Report and compared the cost of litigating this case to prevailing standards for copyright litigation. The AIPLA survey indicates that for parties represented by medium-to-large firms (i.e., those employing 60 or more attorneys), the median cost in 2020 to defend a copyright case through discovery, against an entity asserting a claim of over $25 million, was **$3 million**. True and accurate copies of relevant excerpts from the AIPLA Economic Survey are attached hereto as **Exhibit F**.

40.     The relevant fees charged by Hogan Lovells, DLA Piper, and Husch Blackwell combined to defend against Infogroup's "tens of millions of dollars" copyright claim (*see* Exhibit L) through summary judgment and subsequent motion practice and dismissal were only

$2,024,180.38. That figure falls below the median cost of defending a copyright case through pre-trial by nearly $1 million.

**B.     The Rates Charged for this Matter Were Reasonable.**

**1.     Office Depot Could Not Have Retained Only Omaha, Nebraska Attorneys for this Matter without Also Retaining Non-Nebraska IP Specialists**

41.     As noted above, DocketNavigator and other PACER-based query services indicate that only 54 copyright cases have been brought in the District of Nebraska in the past 10 years. I was able to locate only five firms in Omaha, Nebraska with notable copyright experience: Husch Blackwell, Koley Jessen, Kutak Rock, Baird Holm, and Fraser Stryker. Kutak Rock and Koley Jessen represented Infogroup in another copyright matter captioned *Infogroup, Inc. v. DatabaseUSA.com LLC*, Case No. 8:14-cv-00049-JMG-SMB (D. Neb. Filed Feb. 12, 2024). *See* **Exhibit B** (Infogroup's motion indicating that the requested fees included those from Koley Jessen and Kutak Rock). Baird Holm also represented Infogroup. *See, e.g., Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815 (S.D. Iowa 2015). The law firm Fraser Stryker represented defendant DatabaseUSA.com, LLC in an action copyright and trademark infringement case filed by Infogroup. *See Infogroup v. DatabaseUSA.com, LLC*, 95 F.Supp.3d 1170 (D. Neb. 2015). Not only did DatabaseUSA lose that case, but Infogroup was awarded attorneys' fees. *Infogroup, Inc. v. DatabaseUSA.com LLC*, No. 8:14-CV-49, 2018 WL 6624217, at *24 (D. Neb. Dec. 18, 2018). And notably, the awarded fees included fees for non-Nebraska firms. *See supra* ¶ 3. That leaves Husch Blackwell, which has also commonly partnered with non-Nebraska firms in other intellectual property cases. As mentioned above, Office Depot retained Ms. Jensen of Husch Blackwell as Nebraska counsel.

**2.     Hogan Lovells' Rates are Comparable to Prevailing Rates for Like-Skilled Professionals.**

15

42.     The billing rates for partners, of counsel, and associates who worked on this case (shown in **Exhibit A**) are consistent with the numbers reported in the 2021 AIPLA Economic Survey (**Exhibit F**). The survey indicates that the median billing rate for partners at private firms in the Washington, D.C. Consolidated Metropolitan Statistical Area (CMSA) was $525 in 2020, and the third quartile (75%) was $847. The median billing rate for counsels and associates at private firms in the D.C. CMSA was $421 in 2020, and the third quartile (75%) was $500. The survey indicates that the median billing rate for partners at private firms in the Boston Consolidated Metropolitan Statistical Area (CMSA) was $600 in 2020, and the third quartile (75%) was $831. The median billing rate for counsels and associates at private firms in the Boston CMSA was $508 in 2020, and the third quartile (75%) was $728. The survey indicates that the median billing rate for associates in the New York CSMA was $775 in 2020. For private law firms with 150 or more associates, the median rate and third quartile rates for full-time intellectual property partners during the same time period were significantly higher: $795-1100 nationwide, while the figures for full-time intellectual property counsels and associates nationwide were also higher, at $585-810. These figures do not account for rate increases in the industry after 2020, which will be revealed in AIPLA's upcoming 2023 survey. Of the 16 key timekeepers, all of the attorneys are full-time intellectual property attorneys, with the exceptions of Marnie Jensen, and Kamron Hasan, who were billed out in range with the other Central attorneys from the AIPLA survey, and Katherine Wellington, a former Supreme Court clerk whose particular skillset was employed sparingly to litigate constitutional law issues.

| Locale | Title | Median | Third Quartile | Office Depot Team Avg. |
|--------|-------|--------|----------------|------------------------|
| Washington | Partner | $525 | $847 | $870 (including Damon Lewis as lead counsel throughout) |
| | Associate/Counsel | $421 | $500 | $734 |
| Boston | Partner | $600 | $831 | $1023 |
| | Associate/Counsel | $508 | $728 | $950 |
| New York | Associate/Counsel | $755 | - | $749 |
| Full-time IP attorneys | Partner | $795 | $1100 | $902 |
| | Associate/Counsel | $585 | $810 | $742 |
| Non-Partner Track Attorney with 10-14 years IP law experience | | $590 | - | $239 |

43.     The rates charged to Office Depot should be compared to the small number of firms with the size, experience, and expertise to effectively and successfully litigate a case of this size and complexity. In this regard, I note that both Hogan Lovells and DLA Piper have nationally and internationally recognized litigation and intellectual property practices. In 2021, Hogan Lovells received top-tier rankings for intellectual property in the Chambers Global-wide, Europe-wide, and Asia-Pacific guides, in addition to being nominated across 22 categories at the Managing IP EMEA Awards and Managing IP Americas Awards. In 2023, Hogan Lovells received an ranking for intellectual property in the Washington, DC office, in part due to its involvement in this case. Also in 2021, Law360 named Hogan Lovells' litigation group "Trials Group of the Year." DLA Piper also receives frequent recognition from Chambers and Law360 among others. In 2021 and 2022, DLA was ranked Band 2 in intellectual property: trademark, copyright & trade secrets, both nationwide and in the District of Columbia. Further, DLA Piper was named Law360's Intellectual Property and Technology practice a Practice Group of the Year in 2021. And as indicated above, the individual attorneys working this matter are highly credentialed, experienced, and skilled. Many have been recognized as among the finest litigators in their respective practices.

### 3. The Rates Charged in this Matter Reflect Substantial Discounts.

44. As demonstrated above, Hogan Lovells' and DLA Piper's standard billing rates are comparable to those charged in the industry handling copyright cases of similar complexity. The billing rates charged to Office Depot in this matter reflect significant discounts off those standard rates.

### C. The Hours Expended on this Matter Were Reasonable.

### 1. Efficiencies in Hours

45. In addition to the discounted billing rates described above, DLA Piper and Hogan Lovells saved Office Depot significant expense normally associated with fact discovery by employing G. Perry Wu, a very experienced former partner, at an extremely below market rate to conduct the great majority of the factual analysis and strategy, negotiating an agreement for the cross-use of materials discovered in the Massachusetts Action. See ECF No. 29 (Stipulated Protective Order) ¶ 52. Absent Mr. Wu, Office Depot would have—in my judgment and experience, incurred a half-million dollars more in fees related to discovery in this case.

46. Finally, Hogan Lovells saved Office Depot the significant expense associated with trying this case. Specifically, Office Depot was granted its motion to dismiss on the copyright claim (Count I). With the dismissal ruling, the Court declined to exercise supplemental jurisdiction with respect to Infogroup's pure contract claim (Count II), allowing for the dismissal of that claim and the successful conclusion of this case before the Court. This success saved substantial attorneys' fees, expert witness fees and costs, and other party and Court resources that would otherwise have been incurred at trial.

### 2. Office Depot and its Outside Counsel Have Stringent Billing Policies and Controls.

47.     I personally conduct a thorough review of each invoice before sending it to Office Depot to confirm that each entry reflects time appropriately charged to Office Depot.

48.     In instances where an entry reflects time that should not be charged to the client—whether due to a special client arrangement, inefficiencies, or otherwise—the entry is removed from the invoice or time charged is reduced, and those amounts are not billed to the client. Some instances where entries are reduced or altogether removed from an invoice or otherwise not billed to the client include: (i) time spent by a new team member getting up-to-speed on case basics; (ii) training on various tools and processes; (iii) internal case administration, such as updating case calendars; (iv) preparing case budgets and reviewing draft invoices; and (v) conducting legal research. In the end, each invoice is personally reviewed and edited by me, and a further review is conducted by accounting support staff to ensure accuracies.

49.     Hogan Lovells, DLA Piper, and Husch Blackwell have each agreed to additional rigorous billing requirements with Office Depot, including billing in 0.10 time increments; and a specificity requirement for each time entry.

50.     Over the course of the case, these billing policies and controls resulted in substantial amounts of time written off or reduced by me or in some instances by Office Depot upon review of each invoice. In reviewing the bills, I wrote down significant amounts of time to ensure efficiencies were realized in the bills. At one year at Hogan Lovells alone, I wrote off over 60 hours from the invoices sent to Office Depot. I performed similar write downs in the previous two years at DLA Piper.

## VI.     ADDITIONAL RELEVANT DOCUMENTS AND COMMUNICATIONS

51.     Attached as **Exhibit G** is a true and accurate copy of Office Depot's Response to Infogroup's Interrogatory No. 1 served on Infogroup on March 12, 2021 and verified on May 4, 2021.

52.     Attached as **Exhibit H** is a true and accurate copy of excerpts from the transcript of the January 12, 2022 deposition of Mukund Padmanabhan.

53.     Attached as **Exhibit I** is a true and accurate copy of a February 25, 2022 letter sent from Office Depot's counsel to Infogroup's counsel via email with a settlement offer, submitted to show the catalog of exculpatory evidence produced negating Infogroup's claim.

54.     On February 25, 2022, Gregory C. Scaglione (counsel for Infogroup) emailed me rejecting Office Depot's settlement offer from earlier in the same day.

55.     Attached as **Exhibit J** is a true and accurate copy of a July 19, 2022 email from Emily Coffey (counsel for Infogroup) to counsel for Office Depot requesting a re-production of certain documents previously produced by Office Depot in the case.

56.     On July 20, 2022, Gregory C. Scaglione wrote to me with a settlement offer.

57.     Attached as **Exhibit K** is a true and accurate copy of an August 2, 2022 letter from me to Gregory Scaglione regarding Infogroup's reproduction request and conveying a new settlement offer, submitted to show Office Depot's response to Infogroup's mishandling Office Depot discovery productions.

58.     On August 2, 2022, Gregory Scaglione emailed me rejecting Office Depot's settlement offer from earlier in the same day.

59.     On August 10, 2022 I emailed Gregory C. Scaglione affirmatively rejecting Infogroup's August 5, 2022 settlement offer and providing a counteroffer.

60.     Attached as **Exhibit L** is a true and accurate copy of a December 6, 2020 email from Gregory C. Scaglione to me submitted herein to show that Infogroup stated it "intend[s] to show that Infogroup's damages are well into the tens of millions of dollars, plus interest, attorney fees and costs, and seek a temporary and permanent injunctions."

61.     Attached as **Exhibit M** are true and accurate copies of invoices to Office Depot for this matter with attorney-client privileged material redacted.

62.     On July 20, 2023, Office Depot served a copy of its Motion for Fees and Costs on counsel for Infogroup. On July 26, 2023, Office Depot served copies of the invoices in Exhibit M on counsel for Infogroup.

63.     On August 3, I received Infogroup's draft response. The response did not particularly identify the line items to which it objected, nor did it present any argument that the rates invoiced were unreasonable.

64.     On August 10, 2023, I met and conferred with Gregory C. Scaglione and Elizabeth Luebbert Enroth of Koley Jessen (Infogroup's counsel) regarding Office Depot's Motion for Fees and Costs. My colleagues Lauren B. Cury and Gurtej Singh also attended on behalf of Office Depot. Infogroup's counsel confirmed they had had an opportunity to review Office Depot's invoices. Infogroup's counsel stated that they opposed Office Depot's motion in its entirety, but did not identify any specific fees and/or costs they disagreed with. Infogroup was not willing to make an offer to quiet this motion because they believe that Office Depot is not entitled to anything because its fees are excessive. I noted that I was available and open to continuing discussions, should they have any compromise positions to propose between the meet and confer and the filing date.

I declare that the foregoing is true and correct to the best of my knowledge, under penalty of perjury.

Signed this 21st day of August, 2023 by:         _____

                                                 Damon M. Lewis

21