UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-CV-80358-AMC/BER

INFOGROUP INC.,

                Plaintiff,

vs.

OFFICE DEPOT INC.,

                Defendant.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTIONS FOR ATTORNEYS' FEES AND EXPENSES [ECF Nos. 227, 247]**

Earlier this year, the Honorable Aileen M. Cannon adopted my report and recommendation finding that Defendant Office Depot Inc., as the prevailing party in the underlying litigation, is entitled to recover its reasonable attorneys' fees pursuant to the parties' Licensing Agreement. ECF Nos. 236, 243. Presently before me are Office Depot's motion seeking $2,024,180.38 in attorneys' fees for defending against Plaintiff's claims and a supplemental motion seeking an additional $372,415.15 in fees incurred after the case was closed on June 20, 2023. ECF No. 227-1 at 13. 247.

For the reasons set forth below, I RECOMMEND that Office Depot's motions for attorneys' fees and costs be GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

Plaintiff initially filed this case in the District of Nebraska as a one-count Complaint alleging copyright misappropriation, believing that Office Depot had incorporated Plaintiff's Business Database into a mapping software program developed by Office Depot. ECF Nos. 1, 135 at ¶ 7. Because Plaintiff believed that this conduct constituted a copyright violation, which did not implicate the Licensing Agreement it had with Office Depot, Plaintiff's Complaint did not include a claim for breach of contract. ECF No. 135 at ¶ 6.

Eventually, Plaintiff determined that it was necessary to amend its Complaint to add a breach of contract claim. *Id.* at ¶ 8. The Nebraska court granted Plaintiff leave to amend (ECF No. 163), and Plaintiff filed its Amended Complaint, alleging that Office Depot infringed upon its copyrights by allowing its Real Estate Department to conduct research and analytics that exceeded the scope of the Licensing Agreement. ECF No. 167 at ¶ 43.

Office Depot filed a motion to dismiss the Amended Complaint while the case was still pending in the District of Nebraska. ECF No. 180.[1] Once the case was transferred to this Court, Judge Cannon granted Office Depot leave to refile the motion in this Court. ECF Nos. 208, 209.

In her decision granting dismissal of the Amended Complaint, Judge Cannon rejected Plaintiff's "attempts to restrict the broad language in the Licensing

---

[1] The case was pending in Nebraska for three years before being transferred to this Court.

Agreement;" she agreed with Office Depot's reading of the Licensing Agreement, which "comport[ed] with the ordinary meaning of the language in the Agreement, [and] does not restrict Defendant's use of the Licensed Data as Plaintiff suggests." ECF No. 222 at 7-8. Judge Cannon dismissed the copyright misappropriation claim in Count I and declined to exercise supplemental jurisdiction over the breach of contract claim in Count II.

In assessing Office Depot's entitlement to fees and costs, Judge Cannon adopted my findings that attorneys' fees were not available under the Copyright Act (because Plaintiff's lawsuit was neither frivolous nor objectively unreasonable), but that fees were recoverable under the Licensing Agreement; costs would be limited to those taxable under 28 U.S.C. § 1920 because the Agreement did not provide for them. *Id.* ECF No. 243 at 7-8. Presently before me is Office Depot's motion which requires me to assess the reasonableness of the nearly $2.5 million sought in attorneys' fees.

## DISCUSSION

1. Calculation of Attorneys' Fees

In calculating attorney fee awards, courts use the lodestar method, whereby a reasonable fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1984)). This

"lodestar" may then be adjusted for the results obtained. *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).[2]

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427.

In determining the reasonableness of the rates sought, courts consider prior hourly rates awarded to other attorneys of similar experience in the community and also the court's own knowledge of the rates charged by local practitioners. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96–97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."); *see also Norman*, 836 F.2d at 1303 ("The court . . . is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees . .

---

[2] Some of the factors courts should consider in computing the lodestar amount are (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, as well as the requisite skill level; (2) the fee customarily charged in the locality for comparable legal services; (3) the significance of the matter, the amount involved, and the results obtained; and (4) the experience, reputation, and ability of the lawyer. *See Wachovia Bank v. Tien,* No. 04-20834, 2015 WL 10911506, at *1 (S.D. Fla. Apr. 7, 2015) (J. Valle) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)).

4

. ."). Ultimately, courts should assess "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184, 190 (2d Cir. 2008) (The court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively.").

With regard to the hours billed, a fee applicant is required to exercise "billing judgment" in the amount of time sought to be reimbursed. *Barnes*, 168 F.3d at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301 (emphasis in original)).

"Failing to lodge specific objections is generally deemed fatal" for a party opposing a motion for attorneys' fees. *Auto-Owners Ins. Co. v. Am. Yachts, Ltd.*, No. 06-80073, 2008 WL 11412068 (S.D. Fla. Feb. 6, 2008) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997)), *report and recommendation adopted*, 2008 WL 11412069 (Feb. 26, 2008). However, courts still have a duty to conduct an independent analysis to ensure that the attorneys' fees sought are reasonable. *See Barnes*, 168 F.3d at 428 ("[I]t is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.").

5

2. Number of Timekeepers

Office Depot identifies 16 individuals who contributed 3,237.8 hours to the defense of this lawsuit (not including the 365.5 hours billed after the case was closed, which will be addressed separately). While recognizing that this case was litigated in two different jurisdictions, I find that the involvement of 16 timekeepers reflects significant overstaffing of this matter and that it would be unreasonable to award reimbursement for all of them. *See Adriana Maria De Oliveira SA v. A-Maculate Cleaning Serv., Inc.*, No. 17-CV-21400, 2018 WL 4462186, at *3 (S.D. Fla. June 14, 2018) (excluding hours not "reasonably expended" due to overstaffing).

Having reviewed the condensed records submitted for each phase of the case (ECF No. 227-2), I have identified the five timekeepers who performed the bulk of the work on this matter: Damon Lewis, Nicholas Papastavros, Kerry Anne O'Neill, Lauren Cury, and Perry Wu. Limiting the compensable hours to these five timekeepers will allow Office Depot to recover for the reasonable work performed by two experienced partners throughout the litigation, as well as work performed by two senior associates and a lawyer with a much lower billing rate during most phases of the case. I recommend deducting the hours billed by the remaining timekeepers, including local counsel in Nebraska, because their involvement was more limited and sporadic.

3. Counsel's Hourly Rates

The hourly rates and experience levels for the five timekeepers identified above are as follows:

Damon Lewis is a partner at Hogan Lovells, who has been practicing law for nearly 20 years and served as Office Depot's lead counsel on this matter. She charged between $790 – $1050 per hour during the pendency of this litigation. I recommend a blended hourly rate of $900.

Nicholas Papastavros is a partner at DLA Piper who has been practicing law for 30 years. He charged between $1000 – $1130 per hour and I recommend a blended hourly rate of $1050.

Kerry Anne O'Neill is an associate at DLA Piper who has been practicing law since 2011. She charged between $790 – $820 per hour and I recommend a blended hourly rate of $800.

Lauren Cury is a senior associate at Hogan Lovells who has been practicing law since 2014. She charged between $790 – $950 per hour and I recommend a blended hourly rate of $850.

Perry Wu is an attorney at DLA Piper who has been practicing for over 30 years. He charged between $215 – $245 per hour and I recommend a blended hourly rate of $230.

Notably, Plaintiff has not specifically objected to any of the hourly rates charged and I find that the blended rates are reasonable for experienced commercial litigators in this District, particularly those specializing in intellectual property disputes.

4. Time Spent

Plaintiff raises numerous objections to the number of hours billed by Office Depot, including redundant and duplicative billing, vague time entries, block billing, and heavy redactions. ECF No. 250. The invoices reflect the following time spent by the five relevant timekeepers:

- Damon Lewis spent 957.7 hours between March 24, 2020 and June 20, 2023.

- Nicholas Papastavros spent 229.1 hours between March 24, 2020 and June 20, 2023.

- Kerry Anne O'Neill spent 185.4 hours between January 9, 2021 and April 4, 2022.

- Lauren Cury spent 359.2 hours between April 5, 2022 and June 20, 2023.

- Perry Wu spent 866.7 hours between November 13, 2020 and August 11, 2022.

Having reviewed the invoices submitted by Office Depot (ECF No. 227-14), I find the hours billed by these five attorneys should be substantially reduced. The billing records reveal numerous instances of excessive billing, redundancies, vague entries, and redactions that make it difficult for the Court to assess the validity of the time spent. For example, there are many billing entries for Lauren Cury and Damon Lewis drafting, reviewing and revising the motion to dismiss. These entries lack specificity and the work appears to be duplicative. Moreover, there are large portions of the invoices that are redacted which "render the time entries vague and make it difficult, if not impossible, for the Court to determine the reasonableness of the time expended . . . " *Hamilton v. Sheridan Healthcare., Inc.*, No. 13-62008-CIV,

2015 WL 13540999, at *5 (S.D. Fla. Dec. 23, 2015) (deducting "a substantial amount of time . . . for unreasonable redactions").[3]

It is well settled that where the documentation supporting a fee application is "voluminous" courts have found that "an hour-by-hour review is simply impractical and a waste of judicial resources." *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1230 (S.D. Fla. 2023) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)). Thus, "trial courts . . . should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Here, I find that a 50% reduction in the number of hours billed by these five timekeepers is appropriate. *See Hepsen v. J.C. Christensen & Assocs., Inc.*, 394 F. App'x 597, 600-01 (11th Cir. 2010) (affirming 50% reduction of hours because "the number of hours billed vastly exceeds what was necessary to prosecute Plaintiff's claims" and many of the time entries were vague and lacked sufficient detail).

Accordingly, I find that for the period from March 24, 2020 until the case was closed on June 20, 2023, Office Depot should recover fees for the following hours and rates:

---

[3] Although Office Depot offers to submit its billing records to the Court for an *in camera* review, I decline this invitation since courts should "avoid turning the attorneys' fees aspect of this case into a second litigation." *Fla. Transportation Serv., Inc. v. Miami-Dade Cnty.*, No. 05-22637-CIV, 2014 WL 12799008, at *2, n.3 (S.D. Fla. Sept. 8, 2014).

Damon Lewis:  478.9 hours x $900 = $431,010

Nicholas Papastavros:  114.6 hours x $1050 = $120,330

Kerry Anne O'Neill:  92.7 hours x $800 = $74,160

Lauren Cury: 179.6 hours x $850 = $152,660

Perry Wu:  433.4 hours x $230 = $99,682

Total: $877,842.00

5. Supplemental Motion for Fees

In its supplemental motion, Office Depot seeks to recover an additional $372,415.15 in attorneys' fees incurred since the case was closed on June 20, 2023. ECF No. 247.  The 365.50 hours billed by Office Depot's lawyers during this phase of the case were incurred in drafting their motion for attorneys' fees, drafting a reply brief on the issue of entitlement to fees, and preparing objections (as well as a response to Plaintiff's objections) on my report and recommendation regarding entitlement to attorneys' fees.  Again, I find the number of hours dedicated to the attorneys' fee aspect of the case to be excessive.

Five timekeepers worked on this phase of the case.  Again, there are substantial redactions to the invoices and the unredacted portions of the invoices largely use the following descriptors: "work on fees motion," "revise fees motion," and "strategize."  ECF No. 247-1.  There is little to differentiate the work of the individual contributors, and overall I find the amount of time spent on this phase of the case to be excessive.  Accordingly, I recommend reducing the "fees on fees" award to $50,000.

6. <u>Motion for Costs</u>

Under the Federal Rules, prevailing parties are entitled to recover costs as a matter of course unless otherwise directed by the court or statute. *See* Fed. R. Civ. P. 54(d)(1). Rule 54(d) creates a presumption in favor of awarding costs, as authorized by statute, to the prevailing party. *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991); *EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).

"Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co.*, 482 U.S. at 441-442. This section provides in part,

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Prevailing parties must file a motion for bill of costs on Form AO 133 and "shall attach copies of any [supporting] documentation . . ." *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.,* No. 17-22539-CIV, 2018 WL 5098974, at *2 (S.D. Fla. Sept. 27, 2018) (citing S.D. Fla. L. R. 7.3(c)).

Here, Office Depot's motion seeks "non-statutory costs" in the amount of $40,241.12. *See* Declaration of Damon Lewis, Exhibit E (ECF No. 227-6). The Court has already rejected Office Depot's claim that it is entitled to reimbursement of its litigation expenses under the Licensing Agreement and Office Depot has not submitted a bill of costs or any invoices to support the recovery of any statutorily taxable costs. Accordingly, Office Depot's motion for costs should be denied.

## RECOMMENDATION

Based on the foregoing, I **RECOMMEND** that Defendant's Motions for Attorneys' Fees and Costs (ECF Nos. 227, 247) be **GRANTED IN PART AND DENIED IN PART.** Defendant should recover $927,842.00 in attorneys' fees, only.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 21st day of August 2024.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE